The facts are stated in the opinion by WOODSIDE, J., of the court below, as follows:
The plaintiffs here are seeking to restrain the City of Harrisburg and certain of its officials from enforcing the provisions of what is sometimes called an "interim" zoning ordinance, and to direct the proper city official to issue a building permit to the plaintiffs authorizing the construction of five apartment buildings in the city.
It is admitted by the defendants that the application, drawing and specifications and statement on the basis of which the building permit was requested conform in all respects to the requirements of the Building Code of the City of Harrisburg, and that the permit was refused *Page 439 
by the defendants because of the aforesaid ordinance.
The matter comes before us on bill, answer and stipulation. The action might have been mandamus brought to direct the proper official to issue the building permit. See Taylor v.Moore, 303 Pa. 469, 475 (1931). No issue is made of this by the parties.
The facts are set forth in the stipulation and we adopt them as our findings. We shall summarize them here, relating only such as are necessary for an understanding of this opinion.
One of the plaintiffs who owns a four acre tract of land in the City of Harrisburg entered into an agreement with the other two plaintiffs whereby a business corporation is to be formed and five garden-type apartment buildings are to be erected on said tract and financed in the manner provided by the National Housing Act.
The plaintiffs in order to make appropriate application for mortgage insurance under the provisions of said Act caused all necessary plans, drawings and specifications for the construction of said apartments to be prepared by a competent architect. The estimated cost of the construction of these buildings is $948,000. Pursuant to this agreement the plaintiffs, along with the Bryn Mawr Trust Company of Bryn Mawr, Pennsylvania, which has agreed to become mortgagee for said project, made application on February 25, 1949, to the Federal Housing Administration for a loan. Two months later the plaintiffs were notified by the Trust Company that the Federal Housing Administrator had advised it that a rental housing commitment under Section 608 of the National Housing Act had been made available. It has been represented to us at argument that this commitment expires if not accepted prior to July 1 of this year, and *Page 440 
that therefore a final determination is desirable by June 30.[1]
On April 25, the plaintiffs applied to the Building Inspector of the City of Harrisburg, requesting the issuance of a building permit authorizing the construction of the apartment building, and as required by the Building Code a fee of $1300 was tendered.
On May 6, 1949, Ordinance No. 153 Session of 1948-49 was read and placed before the Council of the City of Harrisburg and was passed finally on May 10 and, if valid, became effective May 20.
The following preamble is in the Ordinance:
"WHEREAS, the City Planning Commission of the City of Harrisburg, has for several years been studying the details of a comprehensive zoning ordinance for the City, and
"WHEREAS, the various zoning districts together with the regulations and restrictions to be imposed therein, have in a large part been reduced to writing, but the work has not matured to the point where public hearings can be had, and,
"WHEREAS, in the opinion of City Council it will take additional time to work out the details of a zoning plan, and, further, that it will be destructive of the plan if before the date of its final completion the status quo of the residential districts as contemplated by the plan should not be preserved, and,
"WHEREAS, it is the desire of City Council in order to promote the general welfare of the community to preserve the status quo of the residential districts of the City until the final zoning ordinance can be completed and adopted."
The Ordinance then provides: "that the erection or construction within the residential districts of the City *Page 441 
of Harrisburg as hereinafter defined, of any building or premises which shall be used for, or designed for other than a single family detached dwelling, together with its usual accessories, or the alteration within the said residential districts of any existing single family detached dwelling for any other purpose be and the same is hereby prohibited."
Nothing else is contained in the Ordinance except the description of the two residential districts referred to above; a penalty clause for violation of the above and a general repeal clause.
The land on which the plaintiffs propose to erect the apartments lies wholly within one of the two residential areas described in Ordinance No. 153.
The City Planning Commission, which has been in existence since 1923, recommended the employment of a zoning specialist, who was employed by the City on about May 15, 1945.
On July 12, 1945 the City Planning Commission directed the office of the City Engineer to which the zoning specialist was assigned, to make a complete study of the problems arising in the preparation of a zoning ordinance and to present a zoning plan. Such plan was submitted to the City Planning Commission in 1946 and contained two residential areas known as "R-1" areas, which are the same areas as set forth in Ordinance No. 153. These areas accommodate in the main, single family detached dwellings. The final details of the comprehensive zoning plan and the regulations and restrictions to be imposed in the various districts have not as yet been approved by the said City Planning Commission.
It is agreed that in connection with the passage of Ordinance No. 153,
"(a) There were not recommended to the City Council of Harrisburg the boundaries of districts and appropriate regulations and restrictions to be imposed *Page 442 
by the City Planning Commission of Harrisburg duly created and existing according to law, or a committee of the Council, or any other commission or committee created by City Council for said purpose;
"(b) No tentative report was made and no public meetings thereon were held by the aforesaid City Planning Commission of Harrisburg, or a committee of Council of the City of Harrisburg, or any other commission or committee created by Council of the City of Harrisburg for said purpose;
"(c) No final report was submitted to the City Council of Harrisburg by the aforesaid City Planning Commission of Harrisburg, or a committee of Council of the City of Harrisburg, or any other commission or committee created by Council of the City of Harrisburg for said purpose;
"(d) No notice of hearing was published for ten consecutive days in a daily newspaper or newspapers of general circulation in the City of Harrisburg of a time and place at which the Council of the City of Harrisburg would afford persons affected an opportunity to be heard, and no such hearings were held; and
"(e) Council did not appoint a board of appeals and did not provide that any board of appeals may, in appropriate cases and subject to the appropriate conditions and safeguards, make special exceptions to the terms of the Ordinance, its supplements and amendments, in harmony with its general purpose and intent and in accordance with general or specific rules."
It has been stipulated, "for the purpose of this case only," that: "In order that the aforesaid questions may be determined on or before June 30, 1949,
"(a) the question of the reasonableness of Ordinance No. 153, insofar as it relates to the areas therein described and insofar as it describes certain areas only and limits the type of construction therein, is not in *Page 443 
issue and said Ordinance shall not be deemed unreasonable in such respects; and
"(b) the question of the vested rights of the plaintiffs as affected by any possible retrospective application of Ordinance No. 153 is not in issue, and said Ordinance shall be deemed not to interfere with any such rights, as thus affected."
The only question argued and submitted to us is "whether Ordinance No. 153 is ultra vires and invalid in that:
"(a) its enactment was contrary to the express provisions of sub-heading '(b) Zoning' of Article XLI of the Third Class City Law;
"(b) its enactment was not within any power, implied or inherent, under the provisions of said subheading '(b) Zoning' of Article XLI of the Third Class City Law;
"(c) its enactment was contrary to the provisions of said sub-heading '(b) Zoning' of Article XLI of the Third Class City Law, since no comprehensive zoning plan was adopted by said Ordinance; and
"(d) its enactment was not within any general police power, or any other power, either express, implied or inherent, other than that expressly provided for by said sub-heading '(b) Zoning' of Article XLI of the Third Class City Law?"
Municipalities are not sovereigns. Their powers are limited. It has been said that: "Nothing is better settled than that a municipal corporation does not possess and cannot exercise any other than the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt as to the existence of power is resolved by the courts against its existence in the corporation, and *Page 444 
therefore denied. Dillon on Municipal Corporations, sec. 89":Lesley v. Kite, 192 Pa. 268, 274 (1899); Wentz v. Philadelphiaet al., 301 Pa. 261, 271 (1930); Berwick Lumber Supply Co. v.City of Harrisburg, 52 Dauphin 275, 282 (1942).
Express authority is given to Third Class Cities to enact zoning ordinance under Section 4110-13 of The Third Class City Law of June 23, 1931, P. L. 932, 53 PS 12198-4110 to 4113, inclusive.
The Act provides as follows:
"Article XLI Zoning and Buildings Regulations
. . . . . . . . .
"(b) Zoning
"Section 4110. . . . Cities may, by ordinance, regulate and restrict the height, number of stories, bulk, and size of buildings and other structures, the percentage of lots that may be occupied, the size, depth, and width of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residents, or other purposes, and may make different regulations for different districts thereof, and may alter the same; but no alteration of such regulations may be made, except by the affirmative vote of not less than four of the members of council. Such regulations shall provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained.
"Section 4111. . . . The city planning commission, where such bodies exist, or a committee of the council, or such other commission or committee as may be created by the council for the purpose, shall recommend to the council the boundaries of districts and appropriate regulations and restrictions to be imposed therein. Such body shall make a tentative report, and hold public meetings thereon, before submitting its final report. At *Page 445 
such time as the council may require, after such final report, council shall afford persons affected an opportunity to be heard, at a time and place to be specified in a notice of hearing to be published for ten consecutive days in a daily newspaper or newspapers of general circulation in said city. Council shall not determine the boundaries of any district, nor impose any regulations or restrictions, until after the final report and after said hearing.
"Council may, from time to time, after public notice and hearing, amend, supplement, or change such regulations, restrictions, or district boundaries. If a protest against a proposed amendment, supplement, or change be presented, duly signed, by the owners of twenty per centum, or more, of the frontage proposed to be altered, a three-fourth vote of the members of council shall be required to adopt such proposed amendment, supplement, or change."
(Section 4112 deals with exemption of public service corporations buildings, with which we are not here concerned.)
"Section 4113 Board of Appeals. Council shall appoint a board of appeals, and, in the regulations and restrictions adopted pursuant to the authority of this subdivision (b) of this article, shall provide that the board of appeals may, in appropriate cases, and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance, its supplements and amendments, in harmony with its general purpose and intent, and in accordance with general or specific rules therein contained"
(Section 4113 continues with a number of directions concerning the make-up of the Board, the adoption of rules by it, its powers, appeals to it, and appeals from it to the Court.) *Page 446 
It is to be noted that Section 4111 provides that:
(1) The City Planning Commission shall recommend to Council the boundaries and appropriate regulations and restrictions to be imposed therein; (2) shall make a tentative report and hold public meetings thereon before submittings it final report; (3) Council shall specify in a notice to be published for ten consecutive days in a daily newspaper a time and place of hearing; (4) Council shall afford persons affected an opportunity to be heard after the aforesaid final report.
Council is specifically prohibited from imposing any regulation or restriction until after the final report and after said hearing.
It is agreed that none of these things was done prior to the passage of the Ordinance in question. Furthermore, no Board of Appeals has been appointed as required by Sec. 4113.
The defendants admit that they did not comply with the above provisions of the statute, and cannot rely upon the expressed authority to zone contained therein, but contend that such provisions "carry with them the implied or inherent power to pass an interim ordinance to give effect to the power expressly granted in said sub-heading in order to prevent the defeat of the legislative intent of the expressed powers thus granted, and furthermore it is contended that the said Ordinance No. 153 was within the express grant of the police power as provided in Article XXIV, Section 2403 of The Third Class City Law, (53 PS 12198-2403)."
Section 2403 of The Third Class City Law, supra, provides as follows:
"Specific Powers. In addition to other powers granted by this act, the council of each city shall have power, by ordinance:
(then after 53 paragraphs)
"54. Local Self-Government. In addition to the powers and authority vested in each city by the provisions *Page 447 
of this act, to make and adopt all such ordinances, by-laws, rules and regulations, not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government, safety and welfare of the city, and its trade, commerce and manufactures; and also all such ordinances, by-laws, rules and regulations as may be necessary in and to the exercise of the powers and authority of local self-government in all municipal affairs; and the said ordinances, by-laws, rules and regulations to alter, modify, and repeal at pleasure; and to enforce all ordinances inflicting penalties upon inhabitans or other persons for violations thereof, not exceeding three hundred dollars for any one offense, recoverable with costs, together with judgment of imprisonment, not exceeding ninety days, if the amount of said judgment and costs shall not be paid: Provided, however, That no ordinance, by-laws, rule or regulation shall be made or passed which contravenes or violates any of the provisions of the Constitution of the United States or of this Commonwealth, or of any act of Assembly heretofore or that may be hereafter passed and in force in said city." (53 PS 12198-2403.)
We cannot agree that the above provision authorizes a city to enact a zoning ordinance without following the provisions of Article XLI of the same Act which relate to zoning, nor that said zoning provisions carry with them the implied or inherent power to pass an interim zoning ordinance.
It is settled in Pennsylvania that in the absence of the granting of specific power from the Legislature municipalities do not have the authority to pass zoning ordinances.
Pennsylvania has had what today would be called "zoning" since the days of George Washington. The *Page 448 
City of Philadelphia adopted an Ordinance on June 6, 1796, prohibiting the erection of wooden buildings in a specifically described area of the city. The Ordinance however was adopted under authority given to the City by the Act of April 18, 1795 (3 Dall. St. Laws 771) which empowered it to pass ordinances to prevent persons from erecting wooden mansion houses, etc., within such part of the city "as lies to the eastward of Tenth Street from the River Delaware as they may judge proper." InRespublica v. Duquet, 2 Yeates 493 (1799) the Supreme Court declared the Act and the Ordinance constitutional.
Nearly a century later when the Borough of Norristown attempted to limit the construction of frame buildings without express legislative authority the Supreme Court pointed out that the above Philadelphia Ordinance rested upon specific legislative authority and said: "The charter of the borough of Norristown contains no authority to the council to enact ordinances prohibiting the erection of wooden buildings. Nor is there anything in the grant of general powers conferred upon the borough from which such an authority can be necessarily inferred or to which it is indispensable. Lacking these requirements, the qualities necessary to create the power in question are not present." Kneedler v. Borough of Norristown,100 Pa. 368, 371 (1882).
In Junge's Appeal (No. 2), 89 Pa. Super. 548, 556
(1926) Judge Keller said: "It may be admitted that such zoning ordinance without a statute authorizing it would be void in this State. Whatever may be the law in other states the decisions of our Supreme Court make it clear that in the absence of a grant of power from the Legislature the municipalities of this Commonwealth do not possess the authority to pass such ordinance."
In Liggett's Petition, 291 Pa. 109, 116 (1927) the Supreme Court of Pennsylvania said: "True, in Bryan *Page 449 
v. City of Chester, 212 Pa. 259, back in 1905, before zoning ordinances were authorized in this State, we held that a municipality had no power to enact an ordinance, — common to a whole city and without regard to particular conditions existing in designated, or zoned, districts, — forbidding citizens to erect billboards on their own property, where, as shown by the preamble to the ordinance, the purpose was to prohibit signboards generally because they were 'unsightly' and might create a nuisance. Since that time, however, zoning of cities has become rather universal, and, as shown in our recent opinions (see Ward's App., 289 Pa. 58; White's App., 287 Pa. 259),where authorized by act of assembly and reasonable in their application, zoning ordinances are very generally sustained as a proper exercise of the police power." (Emphasis ours.)
In Jordan et al. v. Township of Lower Merion, 34 Pa. D. C. 551, 552 (1938) Judge DANNEHOWER of the Montgomery County Court said: "Since, in the absence of a grant of power from the legislature, municipalities . . . do not possess authority to pass ordinances on the subject matter of zoning: Kneedler v. Borough of Norristown, 100 Pa. 368 (1882); the primary inquiry in the instant case is whether the general scope and purpose of the amending ordinance is within the grant of power contained. . . ."
The general rule is stated in 58 Am. Jur., Zoning Section 7, as follows: "Municipal authority to enact zoning ordinances is generally expressly authorized by statutory or charter provisions, and sometimes even by constitutional provision. But municipal power to enact and enforce zoning regulations does not exist in the absence of statutory or constitutional authorization, express or implied; the municipality has no inherent power to enact zoning ordinances, and in particular cases zoning ordinances have been found to be unauthorized by any constitutional, statutory, or charter provision. *Page 450 
Moreover, a zoning ordinance is confined by the limitations fixed in the enabling statute, and a particular zoning ordinance or provision thereof may be declared void because it exceeds the power granted by the zoning statutory or charter provision."
And the footnote states: "a general welfare provision had been held not to authorize the enactment of a zoning ordinance" and again "the clearly expressed and mandatory provisions of a zoning enabling statute may not be abrogated, ignored, or relaxed to meet the real or supposed practical needs of the municipality or its inhabitants." 117 A.L.R. 1123.
It is customary for zoning statutes to outline the procedure through which a zoning system may be adopted and the general rule is that a zoning ordinance is invalid where it is not passed as provided by the enabling statute. 58 American Jurisprudence, Page 944 and authorities there stated. See also "Zoning" by Edward M. Bassett, Page 31.
In Pennsylvania our highest court has said: "It is a fundamental principle that the authority of a municipal body is to be found in the statute which confers it, and must be exercised strictly in the manner therein provided." Miners S.Bank v. Duryea Borough, 331 Pa. 458, 462 (1938).
The Supreme Court held in Fierst v. William Penn MemorialCorp., 311 Pa. 263 (1933) that a statement in a section of a zoning ordinance as published that "the location and boundaries are hereby established as shown on the zone map which accompanies this ordinance, and which is hereby declared to be a part hereof," does not meet the requirement of Article XV, section 1502, of the Act of 1931, that, in the publication of the ordinance, reference shall be made to the place where the map is on file and can be examined, if the map is not published as part of the ordinance, even though the name of the township secretary is in the ordinance *Page 451 
and he is designated in the township code as the official keeper of the township records.
When a permit to erect a garage in Pittsburgh was refused by the city officials because of opposition of the board of city planning to the location the Court said in Coyne v. Prichard etal., 272 Pa. 424, 427 (1922): "This board has the power to regulate and restrict the areas in which trades and business of various kinds can be carried on. The appointees in Pittsburgh have undertaken the work of districting the city, but as yet no recommendations have been made to the council. In view of the express provision of the Act of 1919, that 'cities shall not determine the boundaries of any district, nor impose any regulations or restrictions until after the final report of the city planning commission, and after hearing before council,' any action by the board limiting the areas in which certain structures shall be built, is without effect."
Of course, it is well settled that zoning is a proper exercise of the police power and has a direct relation to the preservation of health, safety and general welfare. It is to be remembered, however, as was stated in White's Appeal, 287 Pa. 259,266 (1926) that "While (zoning) regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation." Powers with such serious consequence should be exercised only in the manner designated by the legislature.
In Gilfillan's Permit, 291 Pa. 358, 361 (1927) Justice FRAZER, speaking for the Court said: "But inasmuch as the natural effect of ordinances of this description is to limit private rights in the interest of the public welfare, the exercise of the power must be carefully guarded. . . ."
Although Justice FRAZER was referring to the court's duty to "carefully guard" the power to prevent an unreasonable *Page 452 
exercise of it, what he said is equally applicable to the duty of the legislature to "carefully guard" the power to zone. This the legislature has done by detailing a procedure which it says must be followed before any regulations or restrictions are imposed by the city.
The legislature was clear and explicit in its language. Note the "may"s and the shall"s. Cities "may" regulate and restrict and, "may" make different regulations for different districts, and "may" alter them. But the regulation "shall" provide that a board of appeals "may" vary their application. Note that the legislature says the planning commission (or other body) "shall" recommend to council, "shall" make a tentative report and hold public hearings, council "shall" afford persons an opportunity to be heard. And then to make doubly sure that the procedure outlined in the section would be followed the legislature provided that "Council shall not determine theboundaries of any district, nor impose any regulations orrestrictions, until after the final report and after saidhearing."
It is contended by the defendants that without the power to enact such an interim ordinance as is here in question it would be possible for an owner of land to proceed with the erection of an undesirable building in a residential section immediately before the enactment of a zoning ordinance which would prohibit such building, and thus defeat what the city was attempting to establish after years of deliberation and study. There are two answers to this. In the first place, although the argument is not entirely without merit, it is one which must be directed to the legislature and not to the courts. If the legislature wishes to authorize the enactment of a "temporary" or "interim" ordinance to maintain the status quo it can so provide by legislation with proper safeguards. In the second place, apparently *Page 453 
experience has not indicated that the failure to pass a "temporary" or "interim" ordinance has been any substantial menace to zoning. Not only cities but also boroughs and townships are authorized to pass zoning ordinances. Although there are scores and possibly hundreds of municipalities in Pennsylvania which have enacted zoning ordinances in accordance with the expressed provisions of the relevant statutes, all of which are similar in nature, there is no indication that we could find either by proposed legislation or by cases in any of the courts of this State that these municipalities have suffered from inability to maintain the status quo during the enactment of zoning ordinances.
"Interim" zoning ordinances, although never before known to the courts of this State, have been before the courts of other states.
In an annotation of 136 A.L.R. 850 it is stated: "Temporary zoning or 'stopgap' ordinances have, quite logically it would seem, be held invalid where they were not enacted in compliance with constitutional or statutory provisions authorizing municipalities to enact zoning ordinances."
A few states have approved temporary zoning ordinances. Cases of each jurisdiction, of course, rest upon the constitution, statutes and decisions of the particular state, as well as the peculiar facts of the particular case, and are not satisfactory authority for our determination of the matter before us. We could thus dismiss further consideration of them, particularly since they are in conflict with each other, but since the argument of the defendant rests almost entirely upon the authority of a few such cases we shall refer to them. For the reason set forth above we shall discuss them only briefly.
The leading case cited by the defendants is Miller v. Boardof Public Works, 195 Cal. 477, 234 P. 381 (1925), in which the Supreme Court of California upheld a *Page 454 
temporary zoning ordinance passed by the City of Los Angeles. This case dealt primarily with the question of whether zoning directed solely to use and occupancy is a rightful exercise of the police power conferred upon municipalities. Although the Ordinance in question was a temporary Ordinance, the temporary nature of it was not the issue before the Court, nor was the failure of the City to comply with any legislative mandate as to procedure.
The power of the California City to pass a zoning ordinance existed by virtue of a constitutional provision, and an enabling act very general in its terms. There could be no doubt that the enabling act passed by the California Legislature in 1917 was sufficient authority for the City to pass the Ordinance there questioned.
If Third Class Cities in Pennsylvania were given unlimited authority to pass zoning ordinances the California case would be authority for the right of the City of Harrisburg to pass "an" interim zoning ordinance, though not necessarily "the" interim zoning ordinance involved in this case.
In Fowler v. Obier, 7 S.W.2d 219 (1928 — Ky.) the Supreme Court of Kentucky upheld the power of the City of Louisville to pass a zoning ordinance. The question was whether the City had authority to pass any zoning ordinance because at the time no specific statutory authority existed. The Court held it did. Again there was no question of compliance with statutory regulations or proceeds, for none existed.
The case of City of Dallas et al. v. Meserole Bros.,164 S.W.2d 564 (1942-Texas) dealt with a temporary ordinance but because pending the appeal the temporary zoning ordinance had been superseded by a permanent zoning ordinance the validity of the temporary ordinance had become moot under the decisions of that State. *Page 455 
In Downham v. City Council of Alexandria, 58 F.2d 784
(1932-Virginia) a final ordinance adopted after suit was instituted was held to be applicable.
McCurley v. City of El Reno, 280 P. 467 (1929-Oklahoma) is in our opinion the only case which supports the contention of the defendants. The Oklahoma Court relied upon the Miller andFowler cases, supra, which as stated are not authority for the proposition here advanced. As pointed out in State ex rel.Kramer v. Schwartz, 82 S.W.2d 63 (1935-Mo.) these cases although relied upon by the Oklahoma Court did not lend support to the views expressed by that Court.
The Oklahoma case is not in accord with the prevailing views as reference to the cases of many other jurisdictions will show. Whittemore v. Town Clerk of Falmouth, 12 N.E.2d 187
(1937-Mass.); Shuford v. Town of Waynesville, 214 N.C. 135,198 S.E. 585 (1938); State ex rel. Better Built Home Mortgage Co.v. Davis, 302 Mo. 307, 259 S.W. 80 (1924); NationalTransp. Co. v. Toquet, 123 Conn. 468, 196 A. 344 (1937); Ford.v. Hutchinson, 140 Kan. 307, 37 P.2d 39 (1934); State ex rel.v. Arnold, 138 Ohio St. 259, 34 N.E.2d 777 (1941); State exrel. Castle National, Inc., v. Village of Wickliffe, 80 N.E.2d 200 (1947-Ohio); Krajenke Buick Sales v. Kopkowski,33 N.W.2d 781 (1948-Michigan); State ex rel. Lightman v. Nashville,60 S.W.2d 161 (1933-Tenn.); State ex rel. Kramer v. Schwartz, 336 Missouri 932; 82 S.W.2d 63 (1935) and Downey v. Sioux City,208 Iowa 1273; 227 N.W. 125 (1929).
We think it is not necessary to demonstrate that the Ordinance before us is a zoning ordinance.[2] It may be *Page 456 
intended to be a temporary or interim one but a zoning ordinance nevertheless.
The defendants admit that the Ordinance before us could not "permanently" restrict the use or erection of the forbidden buildings in the described areas. Yet the Ordinance is drafted to do just that. There is nothing in it limiting the time when it shall be effective. In this respect it differs from the temporary ordinances referred to in the Kentucky and Oklahoma
cases where the time the ordinance was to be effective was limited by the ordinance itself.
It is contended by the defendants that the Ordinance will remain in effect until the passage of another zoning ordinance, or for a "reasonable time." If there have been ordinances or statutes, which have been adopted without any provisions limiting their effective time; and which are admittedly illegal except for a "reasonable time," we have no recollection of ever having heard of such.
We have here the anomalous situation of an Ordinance providing an absolute prohibition without limit of time which the defendants admit cannot be valid for an unlimited time.
The record of the case indicates that the City has been in the process of preparing a zoning Ordinance since May 15, 1945, a period of over four years, and that "the work has not matured to the point where public hearings can be had" before the City Planning Commission. As a matter of fact a "final" zoning ordinance may never be enacted. There is no duty upon the Council to enact any zoning Ordinance. There is nothing contained in the so-called interim Ordinance by which the present Council even pledges itself to the enactment of a "final" Ordinance.
Query: If the present Ordinance would be legal would it take a vote of four members of Council to pass the "final" Ordinance since The Third Class City Code (supra) provides that no alterations of zoning regulations *Page 457 
shall be made except by the affirmative vote of not less than four councilmen?
In summarizing we point out that we start in this case with the proposition that before specific legislative authority to zone was given municipalities, they did not have the authority under their general powers to enact zoning ordinances; that the legislature then gave them power to enact zoning ordinances but specifically set forth what they shall do before they impose any regulations or restrictions. It is our opinion that the municipalities must comply with the provision of the statute relating to zoning before they can enact any restrictions. The Ordinance before us containing restrictions was not enacted in accordance with the provisions of the statute relating to zoning and is therefore void, and the defendants must be restrained from enforcing it. As the building permit would be issued except for the Ordinance the building inspector must be directed to issue it.
Defendants appealed.
[1] We are advised by counsel that the Supreme Court has already agreed to hear argument on this case June 24th should the aggrieved party appeal.
[2] For definitions of zoning see McQuillin on Municipal Corporations, Second Edition, Revised Volume 3, Sec. 1026, pages 403, 404, 405; 58 Am. Jur. (1948) page 940, Miller v.Board of Public Works, 234 P. 381 (Cal.) 38 A.L.R. 1479, 1483.
On this Twenty-fifth day of June, 1949, it is ordered that the decree of the court below in the above entitled case be affirmed on the opinion of Judge ROBERT E. WOODSIDE. The appellant will pay its own costs and the appellees will pay their own costs. *Page 458