Frank J. WILSON

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION
AUTHORITY, et al.

Civ. A. No. 88–1976.

United States District Court,
E.D. Pennsylvania.

March 30, 1989.

Gail Lopez–Henriquez, Philadelphia, Pa., for plaintiff.

Francis J. Connell, III, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff, a former Southeastern Pennsylvania Transportation Authority ("SEPTA") employee, brought this action against SEPTA and Lewis Gould, who was chairman of SEPTA's board in 1987, to recover severance pay and salary assertedly due to plaintiff under an alleged employment contract.

In late 1987, plaintiff was SEPTA's Assistant General Manager for Operations, and his salary was $85,000 per year. At that time, the SEPTA board was looking for a new General Manager. The board considered hiring plaintiff for this position, but passed him over in favor of William Stead. Plaintiff then considered leaving SEPTA, and was looking for other jobs. However, on November 16, 1987, Stead (as the new General Manager) and Gould (as Chairman of the Board) signed a letter to plaintiff which provided that, in consideration for remaining at SEPTA, plaintiff would become Deputy General Manager for Operations (a newly created position), and receive a salary of $110,000 per year plus various fringe benefits, effective November 30, 1987. The alleged contract also provided that if plaintiff were fired for any reason, or if he resigned because he was asked to take a position with a lower salary or less responsibility, he was to receive a year's severance pay. Plaintiff avers that, in reliance on this letter, he stopped looking for other jobs.

Two weeks later, however, on December 1, 1987, (the day after the alleged contract was to become effective) Stead told plaintiff that SEPTA would not abide by the alleged contract and that instead, he wanted plaintiff to take the position of Assistant Deputy General Manager for Strategic Planning, a different position with less responsibility, at a salary of $100,000 per year.

Plaintiff rejected this suggestion and resigned from SEPTA a few weeks later. His resignation became effective on February 10, 1988. Plaintiff never assumed his new duties, nor was his salary ever increased from $85,000 per year. He received no severance pay.

In this action, plaintiff claims that he resigned as the result of a demotion, and seeks $110,000 in severance pay and some $4200 in unpaid salary,[1] based on the alleged contract signed by Stead and Gould. Plaintiff and SEPTA have filed cross motions for summary judgment on plaintiff's claims against SEPTA. No motion on plaintiff's claim against the other defendant, Gould, is before me.

SEPTA argues that the alleged contract with plaintiff is unenforceable under Pennsylvania law because (1) severance pay agreements with employees like plaintiff are not authorized by SEPTA's enabling legislation; (2) the alleged contract was not approved by board resolution; and (3) it lacks consideration. SEPTA argues further that under Pennsylvania law, as a municipal corporation, it is not bound by the doctrines of apparent authority and equitable estoppel. For the reasons that follow, I will grant SEPTA's motion for summary judgment, and deny plaintiff's.

### A. THE ALLEGED CONTRACT IS ULTRA VIRES.

Subject matter jurisdiction in this case rests on diversity of citizenship between plaintiff and the defendants. Pennsylvania law therefore applies.

As a municipal corporation, SEPTA has the power to do only what its enabling legislation authorizes. *Kline v. Harrisburg*, 362 Pa. 438, 443–44, 68 A.2d 182 (1949). Since plaintiff's suit is based on an alleged employment contract between plaintiff and SEPTA (the letter signed by Stead and Gould), the threshold question is whether that alleged contract was authorized under SEPTA's enabling legislation. For the following reasons, I conclude that it was not.

---

**1.** The figure of approximately $4200 is the difference between the amount plaintiff was paid (at the rate of $85,000 per year), and the amount he would have been paid (at the rate of $110,000 per year) between November 30, 1987, and February 10, 1988.

### 1. The enabling legislation confines plaintiff's compensation to board-established salary scales.

SEPTA's enabling legislation is the Pennsylvania Urban Mass Transportation Law ("PUMTL"), 55 P.S. § 600.301 *et seq.* The PUMTL does not explicitly authorize the payment of "severance pay." It does, however, authorize the payment of employee compensation and benefits, subject to certain requirements.

The PUMTL requires the chief operations officer (whom SEPTA calls the "general manager") to "[a]ppoint ... employes ... subject to the provisions of this article," *id.* § 600.325(3), and to "classify all the offices, positions and grades of regular employment required, excepting that of the chairman of the board, secretary, counsel to the board and controller, with reference to the duties thereof and the compensation fixed therefor...." *Id.* § 600.329(a). It further provides that "[n]o officer or employe shall be discharged or demoted except for just cause."[2] *Id.*

The PUMTL's compensation scheme is as follows:

> The board acting through the chief operations officer shall have the right to bargain collectively and enter into agreements with labor organizations.... The compensation of the chief operations officer, counsel to the board, secretary and controller shall be fixed by the board. For all other officers, employes, attorneys, engineers, consultants and agents *the board shall establish salary scales. The chief operations officer shall establish within such salary scales compensation levels* based upon written appraisals of performance for all employes under his control.

*Id.* § 600.328 (emphasis added). The PUMTL also expressly authorizes the payment of certain employee benefits: SEPTA may enter into contracts of group insurance for the benefit of its employees, *id.* § 600.303(d)(19), and it must establish and maintain a pension and retirement system. *Id.* § 600.329(c).

Plaintiff was not one of the four top officers whose compensation was to be fixed directly by the board, nor was he a union member subject to a collective bargaining agreement. He was therefore one of the "other ... employes" for whom "the board shall establish salary scales." *Id.* § 600.328. Stead, as chief operations officer, was to classify plaintiff's position or grade of employment, *see id.* § 600.329(a), and the board was to set a salary scale for that position or grade. Stead was authorized to establish plaintiff's "compensation" as long as it was within the "salary scale[ ]" established by the board for plaintiff's position. *See id.* § 600.328.

I must therefore decide whether Stead's promise to plaintiff of a salary of $110,000 per year and a year's severance pay was "compensation ... within [the] salary scale[ ]" established by the board for plaintiff's position.

### 2. The SEPTA board has not established any salary scales.

■ The short answer to this question is that, as the summary judgment record discloses, the SEPTA board has never established any salary scales at all for its nonunion employees. Instead, the General Manager, either directly or acting through his subordinates, has established salary scales and then fixed each employee's compensation within the applicable scale. *See Wilson Affidavit* at ¶ 18; *Kilcur Affidavit* at ¶¶ 3–6; *Gould Letter to Board* at 2. SEPTA's practice clearly does not conform to the requirements of the PUMTL.[3]

---

**2.** Because of this "just cause" provision, SEPTA employees are not employees at will, but instead have tenure granted by statute. *See Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960). When a SEPTA employee is hired, the implied contract that is thereby created includes this tenure.

**3.** Plaintiff argues that the board in effect established one large "salary scale" by fixing the compensation of the chief operations officer, whose practice has been to fix the salaries of his subordinates at descending levels from his. However, even if I were to hold that the board has thus effectively "established" a salary scale, this would not satisfy the requirements of the PUMTL, which calls for the board to establish "salary scales," in the plural: that is, a scale for each position.

Since the chief operations officer is authorized to establish compensation only within salary scales established by the board, and the board did not establish any salary scale for plaintiff's position, Stead had no power to establish compensation for plaintiff, and his promise to pay plaintiff a salary and severance pay is therefore *ultra vires* and void. Gould's signature on the alleged contract, of course, does not supply the authority that is lacking.

## B. PRINCIPLES OF ESTOPPEL APPLY TO CERTAIN ULTRA VIRES ACTS.

The conclusion that the alleged contract is *ultra vires* does not end my analysis, however. In some circumstances a municipal corporation like SEPTA may be bound by principles of equitable estoppel under Pennsylvania law.[4]

A municipal corporation cannot be bound by the *ultra vires* acts of its agents, except that it may be bound by such acts if it had the power to authorize them but did not. *See Breinig v. Allegheny County*, 332 Pa. 474, 485–86, 2 A.2d 842, 848 (1938). A more common way of articulating this principle is that an act is *ultra vires* in the "primary sense," and therefore void, if it is "utterly beyond the jurisdiction" of the municipal corporation; it is *ultra vires* only in a "secondary sense," and therefore subject to estoppel, if it is merely "the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional." *E.g., Albright v. City of Shamokin*, 277 Pa.Super. 344, 348, 419 A.2d 1176, 1178 (1980) (citing *Summer Cottagers' Ass'n of Cape May v. City of Cape May*, 19 N.J. 493, 504, 117 A.2d 585, 590–91 (1955)). Thus, an act that is illegal because of a failure to follow the correct procedure may be subject to estoppel; an act that the corporation could not legally perform under any circumstances is not subject to estoppel.[5]

In the present case, plaintiff argues that estoppel applies regardless of whether plaintiff's alleged contract was *ultra vires* in a primary or in a secondary sense. In support of this argument, he points to three cases in which the Pennsylvania Supreme Court has enforced certain arguably *ultra vires* acts of municipal authorities, without reference to the primary/secondary distinction.

These cases are inapposite, however. In each of them, the court enforced a clause in a collective bargaining agreement, citing the "imperative" public policy of preserving the integrity of the collective bargaining process. *See Fraternal Order of Police v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982) (agreement to select police chief only

---

**4.** Pennsylvania apparently has not applied the doctrine of apparent authority to bind municipal corporations. In other jurisdictions, courts often refuse to do so, reasoning that the powers of municipal corporations and their agents are a matter of public record. *See* 77 A.L.R.3d 925, 928 (1977) (citing cases).

**5.** *Breinig* and *Albright* appear to articulate the same principle despite their use of different language. I note, however, that the application of this principle in *Albright* was somewhat broader than in *Breinig* and cases from other jurisdictions.

In *Albright,* the city code authorized the city to pay retirement benefits after twelve years of work; but the city passed an ordinance that allowed benefits after only ten years of work. Plaintiff retired after ten years in reliance on the ordinance. The court held that the city was estopped from denying the validity of the promise to pay retirement benefits even though the ordinance did not comply with the city code requirements, because the power to pay *retirement benefits in general* was "not utterly beyond the jurisdiction" of the city.

Arguably, by analogy to *Albright,* I could apply estoppel to all of SEPTA's promises of compensation, of any kind, simply because the power to pay *compensation* is not utterly beyond the jurisdiction of SEPTA. However, I believe that under the principal approved in *Albright,* courts would ordinarily focus, not on the validity of the act of paying retirement benefits, but on the validity of the act of paying retirement benefits *after only ten years.* In light of the explicit twelve year requirement in the enabling legislation, the act of paying retirement benefits after only ten years was clearly not a mere procedural irregularity but an act in excess of the city's power, and therefore not subject to estoppel. I suspect that in *Albright,* the court may have been stretching a point because of the traditional judicial reluctance to allow a forfeiture of retirement benefits. I therefore decline to hold that SEPTA is estopped from denying all promises of compensation in any form.

from local police force); *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 391 A.2d 1318 (1978) (agreement to arbitrate); *Ambridge Borough Water Authority v. Columbia*, 458 Pa. 546, 328 A.2d 498 (1974) (agreement to arbitrate). In *Fraternal Order of Police, supra*, 452 A.2d at 1007, the court explained that a municipality's statutory obligation to bargain in good faith requires that questions about the legality of the proposed terms of a collective bargaining agreement be resolved at the bargaining stage. This consideration is clearly irrelevant to plaintiff's case.

Having determined that plaintiff's case is governed by *Breinig* and *Albright*, I must consider whether Stead's promises to pay salary and severance pay to plaintiff were *ultra vires* in the primary sense, and therefore void, or *ultra vires* only in the secondary sense, and therefore subject to estoppel.

### 1. The promise of severance pay.

█ For the reasons that follow, I conclude that Stead's promise to pay plaintiff a year's severance pay was *ultra vires* in the primary sense and thus not subject to estoppel.

The powers granted to a municipal corporation by its enabling legislation are those expressly granted, those necessarily or fairly implied in or incident to the powers expressly granted, and those indispensable to the legislatively declared purposes of the corporation. Any fair, reasonable doubt as to the existence of a power must be resolved against its existence. *Kline v. Harrisburg*, 362 Pa. 438, 443–44, 68 A.2d 182 (1949).

The PUMTL does not expressly authorize SEPTA to pay severance pay to employees like plaintiff. Nor does such a power appear "indispensable" to the purposes expressed in the PUMTL.[6] I must therefore determine whether the power to pay plaintiff the severance pay he was

promised is "fairly implied," without any "fair, reasonable doubt," in the statute.

Plaintiff argues first that this power is fairly implied in the general power to "make and execute all contracts ... necessary and convenient to the exercise of the powers of the authority." 55 P.S. § 600.303(d)(14). I disagree. This provision plainly does not mean that all contracts for any purpose are valid. Only those contracts convenient to the exercise of SEPTA's powers are valid. If SEPTA does not have the power to pay severance pay, a purported contract to pay severance pay is not made valid by this provision.

Second, plaintiff argues that the power to grant severance pay to employees like him is fairly implied in the provision that gives SEPTA the following power:

> To enter into contracts of group insurance for the benefit of its employes, or to continue any existing insurance and/or pension or retirement system and/or any other employe benefit arrangement covering employes of an acquired existing transportation system, and/or to set up a retirement or pension fund *or any other employe benefit arrangement for such employes.*

55 P.S. § 600.303(d)(19) (emphasis added).

Plaintiff contends that the last phrase of this section gives SEPTA the power to make any kind of benefit arrangement (including severance payments) for any of its employees. I disagree. This section covers two kinds of employees: existing employees, and employees of an acquired existing transportation system. Only the first clause, giving SEPTA the power to enter into contracts of group insurance, refers to existing employees like plaintiff. Plaintiff's promised severance pay was not part of a contract of group insurance and is therefore not authorized by this clause. The rest of the section refers to employees of acquired transportation systems, a

---

6. One of the PUMTL's purposes was the "sound replanning and redevelopment" of mass transit. 55 P.S. § 600.301(a)(4). An argument could be made that the security of severance pay is "indispensable" to attracting qualified senior executives to accomplish this purpose. But this is clearly an argument for the legislature, and not the courts, to consider.

group that did not include plaintiff.[7] I therefore decline to infer a power to pay severance pay from this provision.

Third, plaintiff argues that the power to grant severance pay is fairly implied in the power to pay compensation within salary scales established by the board. For the following reasons, I conclude that it is not.

Because compensation for employees like plaintiff must be within "salary scales," SEPTA can only pay those forms of compensation that are capable of being confined within, or defined by, a salary scale. "Salary" is generally defined as a fixed amount of compensation, paid regularly (as by the year, quarter, month or week) for services. *See Webster's Third International Dictionary* (1963); *Benedict v. United States*, 176 U.S. 357, 360, 20 S.Ct. 458, 459, 44 L.Ed. 503 (1900) (defining salary as a "fixed annual or periodical payment for services, depending upon the time, and not upon the amount, of services rendered."); 63A Am.Jur.2d § 453 p. 1001 ("The earmark of salary is a fixed compensation by time.").[8]

To amplify this definition somewhat: compensation in the form of salary is different, for example, from compensation in the form of fees or percentages. The PUMTL would not permit SEPTA to compensate employees like plaintiff by giving them a commission for every contract they negotiate, or a percentage of revenue from operations. These are not forms of com-

pensation that can be confined within, or defined by, "salary" scales.

In addition, the earmark of "compensation for time worked" is not *payment* over time but *accrual* over time of the right to receive payment. "Salary" therefore need not be limited to the weekly paycheck. It may include forms of compensation that accrue over time, while payment of the compensation is deferred. Vacation pay and sick pay, for example, often follow this pattern.

According to this definition of salary, severance pay may or may not be a form of salary, depending on whether the right to receive it accrues over time. For example, an employer could provide that an employee is entitled to three months severance pay after one year of work. That severance pay could then be counted as deferred compensation (albeit only contingent) for the first year's work, and figured into a salary scale for the first year.

On the other hand, in some cases, the right to receive severance pay does not accrue over time. It is promised, not for time worked, but immediately, in order to induce a prospective employee to sign on, or induce a current employee to stay on when he thinks of quitting. When severance pay is used for these purposes, it is compensation for the risk of quitting another job or of staying with a job during an uncertain period, not compensation for time worked. It therefore cannot be confined within, or defined by, a "salary" scale.[9]

---

7. Furthermore, even if plaintiff were a member of this group of employees, the rest of the section would not give SEPTA the power to grant him severance pay. It gives SEPTA the power, first, to continue the existing benefit arrangements of employees of acquired systems, and second, to set up benefit arrangements for "such employes." Despite the broad phrase "any other employe benefit arrangement," the most reasonable interpretation of this section is that SEPTA can "set up" for acquired employees any benefit arrangement that it can set up for existing employees: namely, contracts of group insurance and pension and retirement funds. There is no reason to suppose that the legislature intended SEPTA to favor acquired employees over existing employees, except to the extent of preserving their benefits status quo upon acquisition.

8. Although the word "salary" is arguably capable of a broader definition, I must construe its

meaning narrowly, to avoid inferring a power that the legislature did not intend to create. *See Kline, supra,* 362 Pa. at 443–44, 68 A.2d 182. Furthermore, to define "salary" narrowly is more in keeping with the apparent purpose of the PUMTL's compensation provision as a whole. In requiring the board to set salary scales for various positions, the legislature presumably intended to ensure that the board would be able to predict and control the distribution of money among employees. Similarly, compensation based on time worked is easier to predict and control than compensation based, for example, on fees or percentages.

9. The difficulty of fitting this kind of severance pay into a "salary scale" may be illustrated by an example. Suppose the SEPTA board had established a salary scale for plaintiff's position of between $100,000 and $200,000 per year, and

■ Plaintiff's severance pay did not accrue over time worked. Rather, it was promised in exchange for his agreement to continue working at SEPTA after he was passed over for the job of General Manager. If his alleged contract had been valid, plaintiff would have been entitled to $110,000 severance pay even if he had been fired, or quit after a demotion, on the day that the contract began in force, before he had worked any substantial time under the contract. I therefore conclude that it was not the kind of compensation that could be established "within ... salary scales" under the PUMTL.

Because I conclude that the board would have had no power to pay plaintiff the kind of severance pay he was promised, even if it had followed all the correct procedures under the statute, I hold that Stead's promise to pay plaintiff severance pay was *ultra vires* in the primary sense and thus not subject to estoppel.

### 2. The promise of a $110,000 per year salary.

■ The promise to pay plaintiff a $110,000 per year salary, unlike the severance pay promise, is plainly not "utterly beyond the jurisdiction" of SEPTA. If SEPTA's board had followed the correct procedure by establishing a salary scale for plaintiff's position, it could have authorized Stead to establish that level of compensation for plaintiff. For example, given a board-established salary scale of between $100,000 and $120,000 per year, Stead would have been authorized to establish plaintiff's salary at $110,000 per year. Stead's promise of this salary was therefore *ultra vires* only in a secondary sense, and subject to the doctrine of equitable estoppel. *See Albright, supra,* 419 A.2d at 1178.

However, it is apparent from the summary judgment record that plaintiff cannot establish the elements of estoppel in this case. Under Pennsylvania law, equitable estoppel arises when one party has misrep-

resented some material fact to another, and that other has been prejudiced by detrimentally changing his position in justifiable reliance on the misrepresented fact. *Novelty Knitting Mills v. Siskind,* 500 Pa. 432, 457 A.2d 502, 503–504 (1983). The mere disappointment of a justifiable expectation is not enough to show detrimental reliance; a party must show that he is in a worse position than he would have been but for the misrepresentation. *Card v. Commonwealth of Pennsylvania (Pennsylvania School Employes' Retirement Board),* 83 Pa.Cmwlth. 602, 478 A.2d 510, 514 (1984).

■ Since this issue is before me on cross motions for summary judgment, I must determine whether the record shows that there is a genuine issue of material fact as to any of the elements of estoppel. *See* F.R.Civ.P. 56(c). For the reasons that follow, I conclude that plaintiff has adduced no evidence of detrimental reliance, and therefore that, as a matter of law, defendant is not estopped from asserting the invalidity of Stead's promise to pay plaintiff a salary of $110,000 per year.

Plaintiff's equitable estoppel claim is based on the theory that SEPTA, through past practices and the words and conduct of Stead and Gould, falsely represented to plaintiff that Stead and Gould had the authority to bind SEPTA to pay plaintiff a salary of $110,000 per year. They made this promise on November 16, 1987, and revoked it two weeks later, on December 1, 1987. Plaintiff must therefore show that he changed his position to his detriment at some point during those two weeks.

Plaintiff's sole evidence of detrimental reliance is contained in his affidavit:

At the time that SEPTA entered into the employment contract at issue herein, I had a number of opportunities for other employment. I was considering a position with a private development firm which offered opportunities for much higher potential income and equity in the

Stead had promised plaintiff a salary of $100,000 per year and a year's severance pay. If plaintiff had been fired after a year, he would have received $200,000, an amount within the salary scale for his position. But if plaintiff had been fired after six months, he would have received $150,000 for six months work, an effective "salary" of $300,000 per year, and therefore an amount outside the scale established by the board.

business. Pursuant to Stead's urging, I contacted San Francisco MUNI concerning the position which Stead was vacating. This job paid more than the $85,000 which I was making at the time, but less than the increase provided for in my agreement. I subsequently informed them that I was no longer interested in the position because the terms agreed to by SEPTA were more attractive. In addition, prior to the signing of the contract by Stead, I was informed of an opening in the position of Executive Director of the Triboro Bridge and Tunnel Authority by a person associated with the person doing the hiring for the position. This position paid $100,000. I began to pursue this opportunity, but ceased my efforts after the contract was signed by Stead. My current salary is $95,000.00, less than I would have received at SEPTA, MUNI, or the Triboro Authority.

*Wilson Affidavit* at ¶ 16.

In essence, plaintiff says merely that he stopped looking for other jobs for two weeks. He does not suggest that he was prejudiced by this hiatus. Plaintiff's assertion that someone told him of an opening at the Triboro Bridge and Tunnel Authority, even if relevant to the issue of reliance, is hearsay if offered to prove that there was such an opening. Plaintiff has thus failed to present admissible evidence sufficient to raise a genuine issue as to detrimental reliance, and summary judgment on the issue of estoppel must be entered in favor of defendant.

### C. CONCLUSION.

For the foregoing reasons, I hold that plaintiff's alleged employment contract is void as *ultra vires*, and that defendant is not estopped to deny its validity. I will therefore grant SEPTA's motion for summary judgment and deny plaintiff's.