# BERRY v. DISTRICT OF COLUMBIA.

MUNICIPAL CORPORATIONS; BUILDING REGULATIONS; DAMAGES.

1. Under sec. 40 of the building regulations of the District of Columbia, providing that no building shall exceed 90 feet in height on a resident street, and that the height of buildings on corner lots shall be regulated by the limitation governing the broader street, a valid permit cannot be granted to erect a building in excess of 90 feet in height on a lot at the northwest corner of Seventeenth and I streets, N. W., in this city, both of which streets are resident streets, although Seventeenth street abuts on a public park.

2. Building regulations promulgated by the District commissioners have the force of law not only on the public, but on the commissioners also; and, while the commissioners may amend or repeal any such regulations by another general order, they have not the power to suspend the same temporarily, or make special orders exempting any particular person or property from their operation. (Following *Brown* v. *District of Columbia*, 29 App. D. C. 273.)

3. Where, at the request of a property owner, the District commissioners, interpreting a building regulation, advised him that he would be allowed to erect a building to a certain height on his lot, and, after he had gone to considerable expense in preparing plans and arranging for the erection of the building, the building inspector rejected his application for a permit on the ground that the height of the proposed building exceeded that allowed by the regulation, and the commissioners on appeal affirmed the action of the building inspector, an action for damages will not lie against the District of Columbia by the property owner for the expense incurred by him.

No. 1925.   Submitted October 20, 1908.   Decided November 4, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on an agreed statement of facts, in an action against the District of Columbia to recover damages.                    *Affirmed.*

The Court in the opinion stated the facts as follows:

This action was brought by Walter V. R. Berry against the District of Columbia to recover damages incurred by him through the refusal of the defendant to permit him to proceed with the erection of an apartment house, of the proposed height of 110 feet, on a lot owned by him at the corner of Seventeenth and I streets, N. W., in the city of Washington.

A jury was waived and the cause submitted, upon an agreed statement of facts, to the court, who entered judgment for the defendant, and the plaintiff has appealed therefrom.

The material facts contained in the agreed statement are:

In 1898, plaintiff owned the property situated at the corner of Seventeenth and I streets; both "residence" streets. The frontage on Seventeenth street is 170 feet; on I street, 78 feet. The lot contains 9,460 square feet, and cost plaintiff the sum of $69,200. It appears from the plat referred to, which corresponds with the city map, that opposite the lot on Seventeenth street lies Farragut square, a public-park reservation. Connecticut avenue is broken by this square, and commences again at the south side thereof. Both streets on the east and west side of the square are designated as Seventeenth street, and are of the regular width of 90 feet. The one on the east terminates at the south side of I street where Connecticut avenue again resumes its course. On the west side, on which plaintiff's property abuts, it continues its course south through the city. I street is substantially the same width as Seventeenth street at plaintiff's corner. Under the authority conferred by an act of Congress, the commissioners, on July 31, 1897, promulgated certain building regulations governing the "construction, erection, maintenance, and removal of all buildings and their appurtenances in the District of Columbia." These regulations charged the inspector of buildings with the enforcement of the same, under the supervision of the commissioners. He was required to sign and issue all permits, etc., keep on file all applications, etc., and make an annual report to the commissioners. All applications shall be made in writing to the owner or his agent,

and shall state clearly and fully the work contemplated to be done, on forms to be prepared and issued by the inspector. In all cases drawings and specifications, so as to enable the inspector to obtain full information as to the character and extent of the work, shall be submitted to him. Sec. 40 of said regulations was as follows:

"No building shall be erected or altered on any street in the District of Columbia to exceed in height above the sidewalk the width of the street in its front; and in no case shall a building exceed 90 feet in height on a resident street, nor 110 feet on a business street as defined in these regulations, except on avenues 160 feet wide, where a height not exceeding 130 feet may be allowed when the lot is of sufficient frontage and depth, in the judgment of the commissioners, to justify the same: *Provided,* That the height of buildings on corner lots, in all cases, shall be regulated by the limitations governing on the broader street."

On March 17, 1898, plaintiff addressed a letter to the commissioners, stating his intention to erect a handsome apartment house on his property. This letter contains the following paragraphs:

"In examining the building regulations, we find that the height of buildings is limited by the width of the broadest street upon which the property abuts, and that, in this case, the distance between the building lines on the east and west sides of Seventeenth street is about 375 feet.

"We presume that it would hardly be reasonable to expect that a building of this height will be permitted, at the same time the conditions surrounding this locality are so different from those generally encountered that the prescribed limit of 90 feet would seem, in our opinion, to be applicable only in cases where building lines are established on both sides of the street.

"The speedy settlement of this point is of the utmost importance to us, and, in order to enable us to proceed with our plans, we desire to be granted the privilege of conferring with you at the earliest possible day.

"We inclose herewith a photograph of the proposed structure, which will furnish you with some idea of its character."

No answer having been received to this letter, plaintiff wrote again on March 24, 1898. This repeats the former statement as to the width of 375 feet between building lines, and adds: "We are informed by Mr. Brady, inspector of buildings, that the question of the height of buildings fronting on squares has never been determined. We propose to put up a building that will be a great ornament and credit to the neighborhood and to the city, and one that will be, architecturally and practically, the most beautiful that money can make. We find, however, that it will be impossible to place it upon a paying basis unless we are allowed to erect it to a height of say 110 feet, such height to be figured to the top line of the cornice, and not to include any kind of sloping roof. The speedy settlement of this point, as previously stated, is of vital importance to us, and we request that the matter be passed upon as soon as possible."

On March 31, 1898, plaintiff received a communication containing the following extract from the minutes of the commissioners: "In the matter of the proposed erection at the northwest corner of Seventeenth and I streets, N. W., of an apartment house, Commissioner Ross submitted the following memorandum in which Commissioner Black concurred:

" 'Sec. 4 of the building regulations of the District of Columbia in regard to the height of buildings provides for an exception where a height exceeding 130 feet may be allowed on avenues 160 feet wide. In view of the fact that the space in front of this proposed structure is over 300 feet wide, there is no question in my mind that the spirit of the regulation, and indeed its letter, allows the erection of said building on the corner of Seventeenth and I streets, N. W., of the height proposed in the application.' "

This was followed by a letter to plaintiff of April 1, 1898, signed by Edward Burr, Captain Corps of Engineers, as follows:

"Dear Sir:—Referring to your letters of the 17th and 24th ultimo, with regard to the erection of an apartment house, corner of Seventeenth and I streets, N. W., facing Farragut square, I have to advise you that the commissioners have decided that, in

view of the fact that the space in front of the proposed building is over 300 feet wide, you will be allowed to construct proposed building to the height desired, that is, 110 feet."

Upon receipt of the foregoing, plaintiff proceeded with his preparations, and engaged an architect to prepare plans for a modern apartment house to cost $500,000. Work was carried on day and night on said plans so that construction might be begun in June, so as to have the house completed by the autumn of 1899. While plans were being prepared, plaintiff proceeded with his arrangements. He organized a corporation under the laws of West Virginia called the "Farragut Building Company," for the purpose of erecting the building, all of the shares of which, save four (the nominal number required by the laws of West Virginia for the qualification of directors) were owned by plaintiff. Plaintiff visited many cities, and induced materialmen and others to enter into building contracts, and to take stock of said corporation in part payment. After much labor, his efforts were successful, so that when the plans were completed, about the middle of May, 1898, he was ready to proceed with his construction. As president of the said corporation, on May 24, 1898, plaintiff filed the completed plans with the inspector of buildings, and made formal application for the permit to build. These showed the proposed height of the building to be 110 feet from sidewalk to the highest point of the roof. Prior to June 13, 1898, plaintiff was informed that a permit could not be issued for a building more than 90 feet in height, and on July 5, 1898, he received a formal letter from the secretary of the commissioners, informing him that his application had been denied.

"By reason of the refusal to allow the erection of said apartment house to a height of more than 90 feet, the plaintiff's backers, who had agreed to furnish the necessary funds, as well as the materialmen, who had agreed to take stock in part payment for their material, on condition that the building could be erected to a height of 110 feet, declined and refused to proceed further.

"Thereafter the plaintiff, for the purpose of trying to interest other persons to unite with him in the erection of an apartment

house of the height of only 90 feet, caused an application to be filed by the Farragut Building Company with the building inspector for a permit to erect an apartment house on said property to the height of 90 feet, and thereafter a permit for the erection of an apartment to the height of 90 feet was duly issued to said Farragut Building Company on the 8th day of October, 1898; but the plaintiff was unable, after repeated efforts, to interest other persons to unite with him in the erection of an apartment house to the height of only 90 feet, and was, therefore, compelled, on or about August 8, 1900, to abandon his efforts to erect an apartment house on said property. The charter of said company subsequently lapsed through nonuser.

"By reason of the foregoing, the plaintiff suffered great damage, and lost the large sums of money which he had expended in his preparation for the erection of said apartment, to wit:

Paid architect for services in connection with drawing plans for apartment house ....................$2,500.00
Paid traveling and other expenses of architect .....     200.00
Paid personal and traveling expenses in connection with procuring contracts with contractors and materialmen for the erection of said building, at least the sum of ...............................     500.00
To time and services of plaintiff in connection with procuring contract with contractors and materialmen, etc., at least the sum of .................  1,200.00
Paid for charter, etc., for Farragut Building Co.....    250.00

                                              $4,650.00

"As to these items it is agreed that the amount of such is correctly stated, and, if the defendant be liable in this cause, such sums as the court may find to be proper elements of damage may be allowed in the finding of the court."

*Mr. Benjamin S. Minor,* for the appellant:

1. The commissioners had authority to grant the appellant the permit to erect a building ten stories in height at the corner of Seventeenth and I streets, N. W., 20 Stat. at L. 131.

2. They are likewise authorized to change, amend, alter, or modify such building regulations as they may deem advisable; and such changes, amendments, alterations, and modifications have the force and effect of law. *Hutchins* v. *Munn,* 22 App. D. C. 88; Dill. Mun. Corp. sec. 314, and cases cited in note 4.

3. The distance between the building line of appellant's property on the west side of Seventeenth street and the building line on the east side of Seventeenth street being more than 300 feet in width, the appellant was entitled to a permit under the then existing building regulations to erect a building not exceeding 130 feet in height, provided the frontage and depth of appellant's lot was, in the judgment of the commissioners, sufficient to justify the same.

4. The action of the commissioners, as contained in the minutes of their proceedings of March 31, 1898, was an official construction of sec. 40 of the building regulations, which expressly reserved to them the right to determine in their judgment the granting of permits under conditions similar to those that existed in the appellant's case.

5. The action of the commissioners of March 31, 1898, whether considered as a construction of sec. 40 of the then existing building regulations and the grant of authority to erect a building 110 feet in height, or as an amendment to sec. 40 applicable generally to buildings thereafter erected on Seventeenth street, facing Farragut square, was a sufficient grant of authority to the appellant to warrant him in proceeding with his preparations for the erecting of the apartment house to the height desired.

6. The repeal or the revocation of the authority so granted to the plaintiff to erect a building to the height of 110 feet could not operate retrospectively to impair the private property rights which had theretofore vested in the plaintiff under it. Dill. Mun. Corp. sec. 314.

7. The plaintiff having incurred liabilities in connection with the erection of said building, and having entered into contracts with materialmen, contractors, and an architect for the erection of said building and the preparation of the plans therefor, he

thereby acquired vested property rights under the permission which had been given him, and was therefore entitled to protection of these rights, of which the commissioners were without authority to deprive him without compensation. *Buffalo* v. *Chadeayne*, 134 N. Y. 165; *Dainese* v. *Cook*, 91 U. S. 580; *Cleveland* v. *Lenze*, 27 Ohio St. 391.

Mr. *E. H. Thomas*, Corporation Counsel, and Mr. *Henry P. Blair*, Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. As shown by the agreed statement of facts, both Seventeenth and I streets, on which plaintiff's corner lot abutted, are "resident" streets. Hence, by the plain terms of sec. 40 of the regulations, any building thereon was limited in height to 90 feet, whether or not one of those streets might have been wider than 90 feet. As a matter of fact, Seventeenth street, in front of plaintiff's lot, is not wider than 90 feet. According to the adopted plan of the city of Washington the streets designated by letters of the alphabet run east and west; the numbered streets from north to south. Occasional broad avenues cross the city diagonally. Many squares are reserved for public parks and are the property of the United States. Some of these occupy spaces which would be partly contained in streets and avenues, had not the same been suspended at one boundary of the square to be continued from the opposite boundary. Farragut square is one of these reservations. As the plan shows, Connecticut avenue, instead of traversing Farragut square from southeast to northwest, was suspended at one boundary of the square and continued from the opposite one. The reservation of these squares for parks, and the general course of particular avenues and streets leading to them, prompted, if they did not necessitate, the occasional shifting of a regular street, in its prolongation, to the extent of the square. Had Connecticut avenue been laid out across Farragut square, there would have been left

a small triangular space between it and the street opposite plaintiff's lot. The city map shows Seventeenth street extending south on the east side of Farragut square, and terminating, on that line, in Connecticut avenue, which began again at the south boundary of the square. Proceeding from the south boundary of the city, north, Seventeenth street was projected along the west side of the square and into Connecticut avenue on the north boundary of the same. These two street ends, as they may be called, on their respective sides of Farragut square, are separate and distinct streets, though called by the same name. There is no ground for the contention that Seventeenth street is to be regarded, in the sense of the building regulations or in any other, as embracing the square lying between its two ends described as aforesaid. They are shown on the map, and have been laid out and improved, as not exceeding a width of 90 feet, respectively. Clearly the proposition to erect a house higher than 90 feet at the corner of Seventeenth and I streets was prohibited by the regulations.

2. It remains to consider whether the action of the commissioners, upon plaintiff's letters of March 17 and 24, 1898, amounted to a license to erect a building more than 90 feet in height at the corner of two "resident" streets, the subsequent revocation or denial of which entitled him to damages for the loss incurred. We are of the opinion that it did not amount to such a license.

The commissioners were empowered by Congress to make and promulgate general regulations governing the matter of building in the District of Columbia. Such regulations, when promulgated, had the force of laws binding not only the public, but the commissioners also. They could amend or repeal by another general order, but they were invested with no power to suspend the same temporarily, or to make special orders exempting any particular person or property from their operation. They could give no special license in conflict with the provisions of the law. *Brown* v. *District of Columbia,* 29 App. D. C. 273, 285. The regulations provided that all applications for permission to build should be submitted, in the first instance, to the inspector of

buildings, an officer created for that purpose, together with the plans and specifications,—just such an application as plaintiff afterwards made when his plans and specifications had been completed.

What the commissioners were asked to do in the letters aforesaid was to interpret sec. 40 in advance, so that plaintiff might make his financial arrangements before deciding upon his building plans. As we have seen, the section is too plain to require interpretation. The action taken by the commissioners was a palpable misconstruction, and amounted to nothing more than a virtual suspension of the regulation by way of excepting plaintiff's property from its operation. They are not judicial officers invested with the power to make interpretations of their regulations, upon the petition of parties, but ministerial officers invested with the power to make certain general regulations, and then to enforce them without favor. Their action, being without authority, the plaintiff assumed the risk of incurring expenses on the faith of it.

When his plans were ready, he submitted them to the inspector of buildings, who refused the permit because the proposed building was in violation of the regulation. As he was under the supervision of the commissioners, an appeal was made to them to reverse his action and order the permit to issue. Then, for the first time regularly and legally, they were called upon to determine whether the proposed building, described in the plans and specifications, was within the prohibition of the regulations. They then arrived at a correct conclusion upon the conditions presented by the application, and approved the action of the inspector.

The court below was right in holding that there was no foundation for the action brought, and the judgment will be affirmed, with costs.                    *Affirmed.*