Argued December 17, 1936.
This appeal is from the dismissal of a bill in equity attacking the constitutionality of a zoning ordinance.
The plaintiffs are the owners of a lot of ground in the city of Philadelphia, bounded on the south and west by land of the Philadelphia Saving Fund Society, one of the defendants (hereinafter referred to as the Saving Society), having thereon erected a three-story brick and stone detached dwelling house, and known as 516 So. 44th Street. The Saving Society lot, with a dwelling thereon erected, known as 4401 Baltimore Avenue, is located on the northwest corner of 44th Street and Baltimore Avenue running approximately east and west and a main artery of travel on which there are double street car tracks.
The City of Philadelphia, on August 10, 1933, adopted a zoning ordinance, under authority granted it by the Act of May 6, 1929, P.L. 1551 (53 P. S. § 3822 et seq.), by which the entire city was divided into a number of districts which were classified as residential, commercial, industrial, etc. The properties of plaintiffs and the Saving Society came under Class "C" Residential. *Page 31 
Charles G. Rule made application for a permit to conduct a funeral parlor at 4401 Baltimore Avenue, which was allowed under Class "A" Commercial listing, but not under Class "C" Residential. The matter was brought before the Board of Adjustment, which recommended that no permit be issued or no change in classification be made. Nothwithstanding this recommendation, council, on September 26, 1935, passed an ordinance changing the classification of this property to Class "A" Commercial, thereby permitting twenty-seven additional uses, such as stores, etc., which were prohibited under its former classification, and ten further uses upon certificate from the Board of Adjustment. Two or three neighborhood stores are on Baltimore Avenue at 43d and 45th Streets, which were there long before the passage of the zoning law of 1929. All other properties on the north side of Baltimore Avenue from 43d Street, an exceedingly long block to 44th Street, and as far as 45th Street, and on 44th Street northward, are exclusively residential in character. On the south side of Baltimore Avenue from 43rd Street west is Clark's Park, which extends from Baltimore Avenue southward to Woodland Avenue, a distance of about a half mile. West of the park on the south side of Baltimore Avenue is the Home of the Merciful Saviour for Crippled Children. The entrance to plaintiffs' property and windows face the side yard toward Baltimore Avenue, giving the plaintiffs an unrestricted view across Baltimore Avenue to Clark's Park.
The plaintiffs averred in their bill of complaint that the uses to which this property was made available are deleterious to their health and safety and to the peaceful enjoyment of their property as a residence, will cause them annoyance and distress, and constitute a nuisance at the location aforesaid, likewise a danger by reason of an increase in vehicular traffic upon the *Page 32 
highways. They prayed to have the ordinance, effective October 10, 1935, declared unconstitutional, null and void; to have the Saving Society property reclassified as part of "C" Residential area; to have defendant enjoined from applying for a permit from the Bureau of Engineering, Surveys and Zoning, Philadelphia, and the city authorities enjoined from issuing a permit, for the use of 4401 Baltimore Avenue otherwise than as "C" Residential land.
At the trial it was shown that the change in classification increased the value of defendant's property ten thousand dollars and depreciated plaintiffs' fifteen hundred dollars.
Two questions arise in this controversy: 1. Have the plaintiffs a standing to object to changes in zoning classification of adjoining property by a city council under special ordinance? 2. Is the ordinance invalid in that it is contrary to public welfare, safety, health, and morals, and does not operate on all alike in an established residential neighborhood so as to make it unconstitutional?
1. Counsel for the Saving Society takes the position that an owner of a property may devote it to any legitimate use he sees fit, subject to restriction by the public authorities under the police power; that plaintiffs' standing to complain is confined to an unreasonable restriction upon their own property.
The 8th section of the Act of 1929, supra (53 P. S. § 3829), provides that persons who are aggrieved by any decision of the Board of Adjustment may appeal to the court within thirty days. The act is silent as to the right of one to appeal from the action of city council; but, as the Board of Adjustment is only an authorized arm or agency of the city council, one who has been injured by the action of the latter body cannot be deprived of an opportunity to be heard by the court. *Page 33 
While the facts are not the same in White et al. v. Old YorkRoad Country Club, 318 Pa. 346, 178 A. 3; Perrin's Appeal,305 Pa. 42, 156 A. 305; In re Appeal of Heman Johnson, 93 Pa. Super. 599; Junge's Appeal (No. 2), 89 Pa. Super. 548, those cases recognized that owners of adjacent or nearby properties who have been aggrieved by the action of the board of appeals have a remedy. We can conceive of no sound reason that would deprive one who has been prejudicially affected by a specific ordinance from questioning its action. If a wrong has been done, a remedy should be afforded by the courts. We think the plaintiffs' right to complain is too clear for further discussion.
2. The appellants, in their second proposition, attack the validity of the action of city council in creating a zoning area comprising only one corner lot.
Present Chief Justice KEPHART, in White's Appeal, 287 Pa. 259,266, 134 A. 409, where a Pittsburgh zoning ordinance was considered, clearly points out that the purpose of a zoning ordinance "is to bring about an orderly development of cities, to establish districts into which business, commerce and industry shall not intrude, and to fix certain territory for different grades of industrial concerns. Such limitations may, in a general sense, be a reasonable exertion of the police power. But, while the ordinance as to its general structure may be valid, it must, in specific application to any of its various phases, be tested by the principles discussed. . . . . . There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper." *Page 34 
Neither that nor other zoning cases passed upon by our courts have definitely fixed, however, the limitations that may be imposed on the area of land in district zoning; but there is a clear implication running through them that a single lot with a building thereon is not a proper area to be classified as a district in itself. Such a restriction results in discrimination, in that it does not bear alike on all persons living in the same territory, and cannot be sustained under the exercise of police power. As Mr. Chief Justice KEPHART said in the White Case (p. 268): "Regulations which do not operate on all alike cannot be justified under the police power. Here it affects property differently on adjoining blocks, or within the same block or on opposite sides of the street," thus indicating that a district should include more than a single block. It would seem to follow that a corner lot with a single house thereon is an unreasonable discrimination.
The precise question under consideration has been twice passed upon by the Supreme Court of New Jersey. In GuarantyConst. Co. et al. v. Town of Bloomfield, 11 N.J. Misc. 613, 168 A. 34, the corner lot in question was 49 1/2 x 100 feet. Justice PARKER used language appropriate to this case in saying: "It is a fundamental theory of the zoning scheme that it shall be for the general good, to secure reasonable neighborhood uniformity, and to exclude structures and occupations which clash therewith." In Linden M.E. Church v.City of Linden, 113 N.J.L. 188, 173 A. 593, 595, the corner lot was 40 x 100 feet. Justice CASE said: "An attempt to wrench a single small lot from its environment and give it a new rating that disturbs the tenor of the neighborhood should receive the close scrutiny of the courts lest the zoning enactments, constitutional and legislative, be diverted from their true objectives." See, also, Sugar v. North Baltimore Meth. Prot.Church (Md.), 165 A. 703; Roman Cath. Archbishop of Diocese *Page 35 of Oregon v. Baker (Ore.), 15 P.2d 391. True, in Harris v.City of Piedmont (Cal.), 42 P.2d 356, the courts took the opposite view and held that an ordinance which created a large number of small zones, indiscriminately scattered over the city of Piedmont and frequently consisting of not more than one lot, was not invalid. We prefer to follow the reasoning and conclusions of the New Jersey cases.
Counsel for the city of Philadelphia calls attention toTaylor v. Haverford Twp., 299 Pa. 402, 149 A. 639, where it was held that a single lot of land was improperly classified as residential instead of commercial. But the situation there was entirely different from the present one. The lot in question was triangular in shape, four times the size of plaintiff's property, was bounded on all sides by public roads, and lay at the dividing line between the residential district and the commercial district. It had been included in the residential area, although it was primarily adapted for commercial purposes and was in the immediate vicinity of the business district. The court did not decide, however, that the lot should be made a district in itself, but held that it should be classified as part of the commercial district which it adjoined and to which it properly belonged. In the instant case, the lot classified as commercial is concedely entirely surrounded by residential area.
It does not follow that, if the city of Philadelphia cannot arbitrarily reclassify single lots as separate zones, the whole zoning system in Philadelphia is affected. Mention was made that in Philadelphia there are many instances where corner properties are classified as commercial although surrounded by properties classed as residential. Even if others have been favored, the plaintiffs are not for that reason deprived of their rights. Stores in existence at the time the General Zoning Ordinance was adopted will not be required to *Page 36 
discontinue if they are in the residential area. Section 4 of the General Zoning Ordinance of the City of Philadelphia provides for the continuance of non-conforming uses which existed at the time the ordinance was passed. See Ward'sAppeal, 289 Pa. 458, 137 A. 630; Gilfillan's Permit, 291 Pa. 358,140 A. 136. Nonconforming uses may be permitted only where the refusal so to do would result in peculiar hardship on the land owners without appreciable injury to the neighborhood. Such variations, however, are confined, as Mr. Justice SADLER stated in Valicenti's Appeal, 298 Pa. 276, 283, 148 A. 308, to cases of practical necessity, and for reasons that are "substantial, serious and compelling." See Junge's Appeal (No.1), 89 Pa. Super. 543; Junge's Appeal (No. 2), supra;Johnson's Appeal, supra.
Here, however, there was no evidence of unnecessary hardship, or substantial, serious, and compelling reasons for segregation of this corner lot into a commercial zone, thereby permitting uses distinct from other properties in that general neighborhood. If there is demand in residential districts for the erection or maintenance of small shops or stores where none have existed, the principal fault is in the uses allowed in the less restricted residential areas being too limited, as pointed out in Ward's Appeal, supra.
The question arose at the argument as to whether or not the Act of Assembly of 1929, supra, was unconstitutional, in that it delegated legislative power to the Board of Adjustment by permitting non-conformity in certain instances. Section 8 (53 P. S. § 3829) provides that, if a city of the first class avails itself of the provisions of the act, the mayor of the city, with the approval of council, shall appoint a board of adjustment and, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance, in harmony with *Page 37 
its general purposes and intent and in accordance with general or specific rules therein contained. This section gives the board of adjustment the following powers:
"2. To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.
"3. To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."
Section 31(6) of the General Zoning Ordinance of the City of Philadelphia provides:
"The said Board of Adjustment may, after public notice and public hearing, subject to appropriate conditions and safeguards, make special exceptions or variances in the terms of this ordinance in harmony with its general purposes and intent."
We are of the opinion that this ordinance provides for a valid delegation of administrative power, and is not an attempt to give to the Board of Adjustment a legislative function. The authority given the board does not permit the exercise of arbitrary power, as it sets up a standard to be followed. Its action is subject to review for failure to exercise its discretion in accordance with the provisions of the act: Taylorv. Moore, 303 Pa. 469, 154 A. 799. It must be kept in mind at all times that the spirit as well as the letter of the ordinance must be observed, so that public health, safety, and general welfare are secure and substantial and equal justice is done: Junge's Appeal (No. 1), supra; Junge's Appeal (No. 2),
supra; Valicenti's Appeal, supra.
The ordinance under consideration in American *Page 38 Baseball Club of Phila. v. Phila., 312 Pa. 311, 167 A. 891, while not a zoning case, was attacked as vesting the administrative board with legislative authority. It required those giving athletic contests or exhibitions to which an admission was charged to pay a license fee, based upon a reasonable estimate of the number of policemen or firemen which, in the opinion of the director of public safety, would be necessary to protect the public safety at and on the premises at such contests or exhibitions at the rate per man of $5.50 per day. This ordinance was upheld as a valid delegation of administrative and not legislative authority. It at least shows a liberal attitude toward administrative boards and officers and recognizes that administrative officers must exercise sound discretion.
A board of adjustment cannot change the designation of districts, contrary to the terms of a zoning ordinance; but there may be particular circumstances of hardship or of necessity that, if established, would allow the board to grant a permit for non-conforming uses. This view is supported by the general trend of authority.[1] *Page 39 
A careful consideration of the record and able arguments of counsel brings us to the conclusion that, while the zoning ordinance does not offend the Constitution in delegating legislative authority, the action of city council in creating a separate commercial zone of an isolated area comprising a single corner lot was unreasonable, discriminatory, and in violation of the scheme and terms of the ordinance.
The decree is reversed, and the learned court below is directed to enter a decree in accordance with the views herein expressed; costs to be paid by appellees.
[1] Berry v. District of Columbia, 32 App. D.C. 96 (1908)
People ex rel. Facey v. Leo, 180 N.Y. Supp. 553 (1920)
People ex rel. Smith v. Walsh, 207 N.Y. Supp. 324 (1924)
People ex rel. Werner v. Walsh, 209 N.Y. Supp. 454 (1925), affirmed without opinion in 148 N.E. 760 (1925)
People ex rel. St. Basil's Church v. Kerner,211 N.Y. Supp. 470 (1925)
People ex rel. Stevens v. Clarke, 215 N.Y. Supp. 190 (1926)
Fordham Manor Reformed Church v. Walsh, 216 N.Y. Supp. 260
(1926)
4672 Broadway Corp. v. Board of Standards and Appeals,232 N.Y. Supp. 266 (1928), affirmed 166 N.E. 328.
Building Inspect. of Lowell v. Stoklosa (Mass.), 145 N.E. 262
(1924)
Bradley v. Board of Zoning Adjust. (Mass.), 150 N.E. 892
(1926)
Hammond v. Board of Appeal (Mass.), 154 N.E. 82 (1926)
Prusik v. Board of Appeal (Mass.) 160 N.E. 812 (1928)
McCord v. Ed Bond Condon Co. (Ga.), 165 S.E. 590 (1932)
L. M. Invest. Co. v. Cutler (Ohio), 180 N.E. 379 (1932)
In re Dawson (Okla.), 277 P. 226 (1928)
Spencer-Sturla Co. v. Memphis (Tenn.), 290 S.W. 608 (1927)
State ex rel. Landis v. Valz (Fla.), 157 So. 651 (1934) Contra:
Welton v. Hamilton (Ill.), 176 N.E. 333 (1931)
Continental Oil Co. v. City of Wichita Falls (Texas), 42 S.W. (2) 236 (1931)