Putney, Appellant, *v.* Abington Township.

464

Argued April 13, 1954. Before HIRT, ROSS, GUN-THER, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES, P. J., absent).

*Robert L. Trescher,* with him *Garrett A. Brownback* and *Montgomery, McCracken, Walker & Rhoads,* for appellants.

*David E. Groshens,* with him *John E. Landis,* for appellees.

*William Barclay Lex* and *Samuel H. High, Jr.,* for intervenor, appellee.

OPINION BY ROSS, J., September 29, 1954:

This is a zoning case. On September 11, 1952, the township commissioners of Abington Township, a first class township in Montgomery County, enacted Ordinance No. 700, amending the basic zoning ordinance of the township by changing the classification of approximately 51 acres of land owned by York Road Business Center, Inc. from residential to commercial. Thereafter, certain individuals and an organization known as the Rydal-Meadowbrook Civic Association filed a complaint to test the legality of the amendment in the Court of Quarter Sessions for Montgomery County pursuant to section 1502 of the *First Class Township Code,* 53 PS §19092-1502, par. 1, which provides, inter alia: "Complaint as to the legality of any ordinance or resolution may be made to the court of quarter sessions . . . by any person aggrieved, within thirty days after any ordinance or resolution takes effect . . ." The land owner was permitted to intervene in the court below in support of the ordinance. After several hearings, the trial judge disposed of the case on the merits, holding that Ordinance No. 700 was "constitutional and valid". Exceptions to the findings of fact and conclusions of law of the trial judge were dismissed by the court en banc and this appeal followed.

On or about May 8, 1952, York Road Business Center, Inc. filed with the township commissioners a petition requesting that the classification of certain land owned by it be changed from "V" Residential to "F" Commercial. The tract involved contained approximately 51 acres and was part of a larger tract acquired by the corporation a short time before the peti-

tion to rezone was filed. On May 8, 1952, the commissioners fixed June 26, 1952 as the date for a public hearing on the proposed zoning change. Notice of this hearing was published in accordance with the requirements of sections 3104 and 3105 of the *Code*, as amended, 53 PS §19092-3104, 53 PS §19092-3105. Further, in partial compliance with a provision of the township zoning ordinance to the effect that notice of a public hearing concerning a zoning change be mailed to the owner or owners of every lot within 500 feet of the area affected by the proposed change, the commissioners caused such notice to be mailed to some but not all such owners.

The public hearing was held on June 26, 1952. Thereafter a written protest against the proposed change was filed, said protest being an attempt to require that the amendment become effective only upon a favorable vote of three-fourths of all the members of the board of township commissioners as provided in section 3105 of the *Code*, as amended, 53 PS §19092-3105. On September 11, 1952, the township commissioners adopted Ordinance No. 700 by a vote of 9 to 3, with one member absent.

The court below found that York Road Business Center, Inc. "plans to build upon the tract a regional shopping center, which will contain a two story department store and approximately fifty single stores, to be located approximately in the center of the tract, with off street parking facilities surrounding the buildings to accommodate 5000 cars." The court found further that "the shopping center will supply the township and school district with an increased tax base which is urgently needed by the municipal authorities to adequately perform their functions". It is apparent—and tacitly admitted by the proponents of the amendment— that the possibility of an increased tax yield was given

great weight by the township commissioners in enacting Ordinance No. 700 and by the court below in sustaining it.

George W. Emlen, a real estate broker and a "stockholder, small stockholder, a member of the Board of Directors" of York Road Business Center, Inc., testified with respect to the corporation's plans for the rezoned tract. He stated: "The group of stores which we hope to build, I am talking about what we hope to do, not what we have actually made leases for or anything of that sort, is a department store, with maybe one hundred and fifty thousand square feet, which would be two stories and a basement. In addition to that, we would have a group of satellite stores, probably as many as thirty." In "round figures", Emlen testified, the corporation planned to erect "Ten million dollars worth of buildings." According to the witness an associate had made "encouraging contacts" with regard to borrowing the ten million dollars from "financial institutions" which Emlen declined to name because such information was "more or less of a confidential nature." At the time of the trial the shopping center was "very much in the embryonic stage", with progress limited to a "little sketching and planning" done by a former employe of one of Emlen's associates. Nothing more had been done because, in Emlen's words, "we are not going to spend a great deal of money until we know we are going to be able to do it." This was the evidence before the court below and there is no reason to suppose that the township commissioners had anything more substantial upon which to base an expectation of financial benefits to the municipality.

Even assuming, however, that Ordinance No. 700 assures the township of "Ten million dollars worth of buildings", we do not believe that the power to enact

zoning regulations can properly be used as a means of producing tax revenue.

"Not only the original zoning ordinance, but all the amendments thereto must be enacted and effectuated by virtue of a valid exercise of the police power." *Mc-Quillin, Municipal Corporations,* vol. 8, section 25.34, page 63. We think it fundamental that a legislative enactment designed solely or even principally for the purpose of producing revenue cannot be justified as a valid exercise of the police power. Cf. *William Lauback & Sons v. Easton,* 347 Pa. 542, 32 A. 2d 881, wherein at page 548 the Supreme Court stated: " 'If anything can be considered as settled under the decisions of our Pennsylvania courts it is that municipalities under the guise of a police regulation cannot impose a revenue tax': Kittanning Boro v. American Nat. Gas Co., 239 Pa. 210, 211, 86 A. 717. The city of Easton could not lawfully rent parking space on its public streets as a revenue measure . . ." That principle is, we believe, broad enough to condemn an ordinance which removes use restrictions from a tract of land for the reason that the tax yield of the municipality might thus be increased.

In *Kline v. Harrisburg,* 362 Pa. 438, 68 A. 2d 182, the Supreme Court affirmed the decree of the Court of Common Pleas of Dauphin County on the opinion of Judge WOODSIDE, now of this Court. At pages 449-450, it is stated: "The general rule is stated in 58 Am. Jur., Zoning Section 7, as follows: 'Municipal authority to enact zoning ordinances is generally expressly authorized by statutory or charter provisions, and sometimes even by constitutional provision. But municipal power to enact and enforce zoning regulations does not exist in the absence of statutory or constitutional authorization, express or implied; the municipality has no inherent power to enact zoning ordi-

nances, and in particular cases zoning ordinances have been found to be unauthorized by any constitutional, statutory, or charter provision. Moreover, a zoning ordinance is confined by the limitations fixed in the enabling statute, and a particular zoning ordinance or provision thereof may be declared void because it exceeds the power granted by the zoning statutory or charter provision.'

"And the footnote states: 'a general welfare provision had been held not to authorize the enactment of a zoning ordinance' and again 'the clearly expressed and mandatory provisions of a zoning enabling statute may not be abrogated, ignored, or relaxed to meet the real or supposed practical needs of the municipality or its inhabitants.' 117 A.L.R. 1123."

An amendment to a zoning ordinance must be enacted in conformity to the grant of power in the enabling statute to the same extent as an original zoning ordinance. *Fairmont Center Co. v. Arnold,* 138 Ohio 259, 34 N.E. 2d 777; *Yokely, Zoning Law and Practice,* 2d ed., vol. 1, section 85, page 189; *McQuillin, Municipal Corporations,* vol. 8, section 25.67, page 117. And an ordinance that conflicts with the provisions of the enabling statute is void. *Genkinger v. New Castle,* 368 Pa. 547, 549, 84 A. 2d 303; citing *Bussone v. Blatchford,* 164 Pa. Superior Ct. 545, 67 A. 2d 587; *Grisbord v. Phila.,* 148 Pa. Superior Ct. 91, 24 A. 2d 646; *Kline v. Harrisburg,* 362 Pa. 438, 68 A. 2d 182, supra; *1 Dillon on Municipal Corporations,* 5th ed., page 449.

It is clear, therefore, that unless the legislature in the zoning enabling statute has granted to a first class township the power to adopt zoning regulations as a means of increasing tax revenue, the ordinance under discussion cannot be sustained on that ground.

The *First Class Township Code* provides in section 3101, 53 PS §19092-3101: "For the purpose of promoting health, safety, morals, or the general welfare of townships, the boards of township commissioners are hereby empowered do regulate . . . the location and use of buildings, structures, and land for trade, industry, residence, or other purposes . . ." Only "general welfare" could possibly be construed to include the power to zone or rezone for increased tax revenue. We think it clear, however, that "general welfare" as used in a zoning enabling statute refers to community benefit in the sense of convenience and comfort insofar as those considerations can be advanced by the imposition or removal of restrictions on the use of land.

Section 3103 of the *Code,* 53 PS §19092-3103, provides: "Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets, to secure safety from fire, panic, and other dangers, to promote health and general welfare, to provide adequate light and air and to prevent the overcrowding of land, to avoid undue concentration of population, to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with a reasonable consideration, among other things, to the character of the district and its peculiar suitabiliy for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such township." Again, there is nothing to suggest that a municipality has the power to zone or rezone to increase its tax yield.

Ordinance No. 700 cannot be sustained simply because it may indirectly and eventually result in financial benefit to the township. It does not necessarily follow, however, that it is invalid.

Appellants contend that the ordinance was not "made in accordance with a comprehensive plan", that it does not tend to further any of the purposes for which the zoning power can be used, and that the provisions of section 3103 apply to amendments as well as to original zoning ordinances. The proponents of the ordinance, on the other hand, argue that "the purposes which a Township must keep in view", as set forth in section 3103, "are related to the adoption of a zoning ordinance and not to changes or amendments thereto." But even assuming that section 3103 applies to amendments, the argument continues, Ordinance No. 700 was enacted in accordance with the requirements delineated therein.

First we must dispose of the argument that section 3103 does not set forth restrictions which must be observed by the township commissioners when an amendment to a zoning ordinance is under consideration. We think it clear that the legislature intended section 3103 to protect property owners in a municipality against arbitrary and impulsive use of the zoning power. Obviously that safeguard is meaningless unless it applies to amendments to a zoning ordinance. It would make little sense to require that certain factors be considered and limit the purposes for which the zoning power can be exercised only with respect to an original zoning ordinance when, by amendments thereto, the ordinance could be completely revised without regard to those factors or purposes.

A more difficult question, however, is whether Ordinance No. 700 reflects consideration of the requirements of section 3103. The appellants state that "One of the most glaring faults of the Ordinance is that it was not passed in accordance with a comprehensive plan." This objection, if established, would render the ordinance invalid. The requirement that zoning

regulations be enacted in accordance with a comprehensive plan is designed to protect property owners against radical and ill-advised departures from the existing plan or system of zoning. The requirement is broad enough to permit progress, but that progress is accompanied by stability and order which conserves property values. There is no merit in appellees' argument that if amendments to a zoning ordinance must be enacted in accordance with a comprehensive plan such changes would be "so difficult, cumbersome and expensive as to be prohibitive" because "a commission" would be required "to study the entire township and redraft a comprehensive plan before action" on the amendment. This argument over-states the difficulty of complying with the legislative mandate. All that is required is that a change of zoning classification bear some reasonable relation to the scheme of zoning adopted in the basic zoning ordinance.

The Township of Abington adopted its basic zoning ordinance on December 8, 1949. The zoning map which is a part of that ordinance discloses that all but one of the commercial zones established by the ordinance lie along streets and highways in corridors which extend for some distance along said streets and highways, but which do not extend back therefrom to any considerable depth. The exception to this plan of commercial zoning is a large area in the northwest part of the township, said area being designated on the zoning map as Willow Grove Park. The York Road Business Center, Inc. tract lies in approximately the geographical center of the township, is slightly smaller than Willow Grove Park, and represents an extension in depth of part of the commercial corridor extending along the easterly side of York Road.

We can find no essential difference between the commercial area designated Willow Grove Park and

that created by Ordinance No. 700. It is true that each differs from all other commercial land in the township in that both represent what might be termed zoning in depth as distinguished from strip or ribbon zoning. It cannot be said, however, that there was a departure from the comprehensive plan or scheme of zoning since Ordinance No. 700 would appear to do no more than create a commercial area similar to one created or approved in the basic zoning ordinance.

Appellants cite *Huebner v. Phila. Saving Fund Society,* 127 Pa. Superior Ct. 28, 192 A. 139, and *De-Blasiis et al. v. Bartell and Oliveto,* 143 Pa. Superior Ct. 485, 18 A. 2d 478, as cases "similar in principle" to the case at bar. We cannot agree. The *Huebner* and *DeBlasiis* cases involved "spot" zoning, a practice which the courts of many jurisdictions have recognized and held invalid. The amendment under attack in the instant case is not spot zoning. "The legislative intention in authorizing comprehensive zoning is reasonable uniformity within districts having in fact the same general characteristics and not the marking off, for peculiar uses or restrictions of small districts essentially similar to the general area in which they are situated. Accordingly, an ordinance cannot create an 'island' of more or less restricted use within a district zoned for a different use or uses, where there are no differentiating relevant factors between the 'island' and the district. A singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid 'spot' zoning." *McQuillin, Municipal Corporations,* vol. 8, sec. 25.83, pages 144-145. "The rule denying the validity of spot zoning has been applied where small areas in residential zones have been taken from such zones and

classified as business or commercial zones." 58 *Am. Jur.* sec. 39, pages 965-966.

The difficulty with the argument that Ordinance No. 700 constitutes spot zoning is that no commercial "island" was created. As the court below stated: "The area involved in the present amendment consists of fifty-one acres, and is not surrounded entirely by residential properties. It is bordered on the west by commercially zoned property. On the south, it adjoins the property of the Butler Buick Company, a large commercial property; and extending along its entire southeasterly boundary is the right of way of the Reading Railroad Company." Appellants cite, and our own research discloses, no appellate court case in which an ordinance which does no more than *extend* an existing commercial area has been held invalid as spot zoning.

Two other objections raised by the appellants were, we believe, properly resolved against them by the court below.

The zoning ordinance of the township provides, among other things, that notice of a public hearing on a proposed zoning change be given by mail "to the owner or owners, if their residence is known, or to the occupier or occupiers of every lot within the area or areas affected by the proposed change, and of every lot within five hundred (500) feet of the area or areas so affected." Sections 3104 and 3105 of the *Code,* 53 PS sec. 19092-3104, 53 PS sec. 19092-3105, deal with notice of a public hearing on a proposed zoning change and require only that notice of such hearing "shall be published in an official newspaper or a paper of general circulation in such township once a week for two weeks." Notice was published in accordance with the requirements of the *Code* and notice was also mailed to some but not all the owners of lots within 500 feet of the York Road Business Center, Inc. tract.

The court below held that the provisions of the zoning ordinance with respect to notice were directory only; that when the township caused notice to be published at the time and in the manner prescribed in sections 3104 and 3105 of the *Code* it had done all that was required to validate the ordinance insofar as notice was concerned. With that conclusion we agree.

Appellants' contention that the amendment was ineffective because it was not passed "by the favorable vote of three-fourths of all the members of the board of township commissioners" is without merit. A three-fourths vote is required by section 3105 of the *Code,* 53 PS §19092-3105, when there has been a "protest against such change, signed by the owners of twenty per centum or more, either of the area of the lots included in such proposed change, or of those *immediately adjacent* in the rear or in the front or to either side thereof extending one-hundred feet therefrom." (Italics supplied). The appellants concede that the "right-of-way of the Reading Railroad is 100 feet in width and lies between" the signers of the protest and the rezoned tract.

We cannot agree that "immediately adjacent" means anything but "touching" the area rezoned. It may be, as appellants contend, that the word "adjacent" standing alone is not precise and can be taken to mean "near or close to but not necessarily touching". When, however, the legislature placed the word "immediately" before adjacent, its meaning became too clear for dispute. The signers of the protest against Ordinance No. 700 did not own lots within 100 feet of the rezoned area and, thus, the protest was ineffective.

Judgment affirmed.