## Stofflet & Tillotson Application

*Cassin W. Craig,* for appellant.

*Samuel H. High, Jr.,* for appellee.

GERBER, J., January 6, 1959.—This case is before the court on a writ of certiorari directed to the Board of Adjustment of Cheltenham Township.

Appellants are neighboring property owners aggrieved by the action of the board in granting a special exception to the applicants, Stofflet & Tillotson, intervenors in this court, permitting it to use the premises situate on the southeast corner of Old York Road and Valley Road, Melrose Park, as an executive office. They urge the court to reverse the action of the board of adjustment. Stofflet & Tillotson is a Pennsylvania corporation engaged in all types of construction with its

present offices located at 2043 Eastburn Avenue, in Philadelphia.

The building sought to be occupied for an executive office is a three-story residential home consisting of 15 rooms and three baths. It is situated in an A residential zone which extends along the entire east side of Old York Road in Cheltenham Township from Cheltenham Avenue to the Reading Railroad crossing in Elkins Park, a distance of more than one mile. The west side of Old York Road is similarly zoned except for a short distance of less than one block starting at a point about 50 feet south of Valley Road and extending southward to Cheltenham Avenue. This latter limited area is zoned F commercial and business district. On this commercial ground, beginning at Cheltenham Avenue and going north, is an Atlantic Refining Service Station and the office and warehouse of the General Fireproofing Company. This tract had previously been the Philadelphia Transportation Co. turntable, and had been so occupied when the township ordinance was initially adopted. Immediately adjacent to the aforesaid warehouse to the north is an apartment building known as the Melrose Court Apartment, situated in a D residential district, a logical buffer between the above-described commercial establishments and the single family residences to the north.

To the east of the premises herein involved, fronting on Valley Road and extending to 12th Street, the first cross street, are two substantial, well maintained and expensive single family detached residences. The one immediately to the east of the site in question is in the aforesaid A residence zone, the other in an AA residence zone. This AA residence zone extends eastward approximately 2,000 feet. Similar substantial and well maintained single family residences and similar zoning exists opposite the premises on the north side of

Valley Road between Old York Road and 12th Street. It is readily apparent that the premises in question are part of a highly zoned residential area existing on both sides of Old York Road for a considerable depth both east and west and which area contains some of the finest homes in the county. Appellants and objectors all reside in homes on Valley Road between Old York Road and 12th Street. The value of the properties of these objectors ranges from $30,000 to $75,000.

The aforesaid special exception was granted under section 1510 of the Cheltenham Zoning Ordinance, as amended, which reads:

"The Board of Adjustment may permit as a special exception the conversion of a building and a designated lot for use as executive offices or for a research laboratory in Residence Districts AA, A, B, C and D, provided the building is no longer used for residence purposes, and provided no manufacturing or sale of goods or merchandise, other than by mail or telephone, is conducted within the said building, and provided further that no structural changes are made to the exterior of the building and *ground to be converted,* so as to change its residential character, and provided further that the Board of Adjustment may impose such conditions and restrictions with respect to the conversion and use of the building and the lot on which it stands for executive offices or for a research laboratory, as the Board may consider appropriate, including the express condition that no use shall be permitted or continued which by reason of noise, odor, dust, smoke, gas, vibration or other cause shall be noxious or offensive."

An executive office is defined in the ordinance, section 100 (30), as:

". . . the office of a business establishment permitted in FF and F Commercial and Business Districts,

but limited to executive, administrative, clerical, legal, accounting, engineering or other similar facilities needed by such business establishment."

FF and F commercial and business districts allow almost all conceivable types of commercial uses. It is therefore immediately apparent that these two sections provide a mechanism for the introduction of a commercial use into the highest type of residential district.

The intervenor plans to use the building for estimating, engineering, purchasing, bookkeeping and general office purposes. On-site parking for 15 vehicles will be provided. With this exception, there will be no other exterior changes to the building. Warehouse and storage facilities will be at a separate location. The normal working day of the intervenor company is 9 a.m. to 5 p.m., five days per week, and according to the testimony of its officers, there will be few business visitors each day.

The decision of the board granting the special exception must be reversed. Section 1510 of Ordinance No. 873, entitled The Cheltenham Zoning Ordinance, as amended, quoted above, is null and void, being an unconstitutional exercise of the police power.

A zoning ordinance must be in conformity with the requirements of the appropriate enabling act. In this case, The First Class Township Code of June 24, 1931, P. L. 1206, art. XXXI, as amended, 53 PS §58101 et seq., applies. The underlying requirement of zoning regulations is that they be in accordance with a comprehensive plan: Article XXXI, sec. 3103, supra, 53 PS §58103. The purpose of this requirement has been stated thusly:

"The requirement that zoning regulations be enacted in accordance with a comprehensive plan is designed to protect property owners against radical and ill-advised departures from the existing plan or sys-

tem of zoning. The requirement is broad enough to permit progress, but that progress is accompanied by stability and order which conserves property values": Putney v. Abington Township, 176 Pa. Superior Ct. 463, 472 (1954).

The court in Putney v. Abington Township, supra, in discussing the meaning of the comprehensive requirement, quoted from McQuillin, Municipal Corporations:

"The legislative intention in authorizing comprehensive zoning is reasonable uniformity within districts having in fact the same general characteristics and not the marking off, for peculiar uses or restrictions of small districts essentially similar to the general area in which they are situated. Accordingly, an ordinance cannot create an 'island' of more or less restricted use within a district zoned for a different use or uses, where there are no differentiating relevant factors between the 'island' and the district. A singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid 'spot' zoning": 8 McQuillin, Municipal Corporations, §25.83, pp. 188-89.

If the township commissioners attempted to rezone a lot to F commercial and business, which lot was completely within a residential zone, it would be a violation of the comprehensive requirement of the enabling act. The creation of a commercial island within a residential area is an invalid exercise of the police power unless one is able to establish an unnecessary hardship sufficient to justify a variance.

Section 1510 of the zoning ordinance empowers the board of adjustment to grant a special exception, allowing the introduction of an executive office into any

residence district. The ordinance defines an executive office as a commercial use: Section 100(30), quoted supra. The issue presented is thus whether the grant of this power to the board of adjustment is valid. The court is of the opinion that section 1510 is invalid and unconstitutional because it violates the comprehensive requirement and constitutes "spot zoning". . . . "All zoning regulations must be in accord with the general comprehensive plan . . . with a view to encouraging the most appropriate use of the land": Gratton v. Conte, 364 Pa. 578, 584 (1950).

Section 1510, in allowing the board to introduce a commercial use into the highest type residential area, is violative of the comprehensive precept. The township commissioners could not validly rezone commercial a single lot located entirely within a residential zone. A provision which allows the board of adjustment to accomplish the identical thing, through the medium of a special exception, also fails as an invalid attempt at spot zoning. Schmidt v. Philadelphia Zoning Board of Adjustment, 382 Pa. 521, 528 (1955), has defined spot zoning as the ". . . singling out of one property for special zoning treatment without consideration of the . . . character of the district and the property's peculiar suitability for particular uses". The evil involved in section 1510 is that it allows for the introduction of a commercial use into a residential area which is not based on a comprehensive plan or on unnecessary hardship. It gives rise to a situation which permits landowners to be treated differently, without any reasonable distinctions and not based on the characteristics of the land itself.

The first proviso in section 1510 states: ". . . provided the building is no longer used for residence purposes . . .".

This is of ambiguous meaning and allows the board to pick and choose in which residential area an execu-

tive office may be located. No restraints are placed on the board. Mere nonuse of a residence, for reasons entirely unrelated to the character and suitability of the building and area, is sufficient under the ordinance to permit the board to allow a conversion thereof to a commercial use as an executive office. There is no sufficiently precise definition of the quoted phrase. Attention is directed to section 1509, permitting conversion to multiple family dwellings, which specifically spells out the conditions which must exist to qualify under the section and the requirements to be met.

Two decisions are pertinent to the issue herein involved. In Huebner v. Philadelphia Saving Fund Society, 127 Pa. Superior Ct. 28, 34 (1937), an amendatory ordinance changing the classification of one lot, which was entirely surrounded by a residential area, from residential to commercial, was held to be arbitrary and discriminatory, and thus unconstitutional. The court stated that: ". . . there is a clear implication . . . that a single lot with a building thereon is not a proper area to be classified as a district in itself. Such a restriction results in discrimination, in that it does not bear alike on all persons living in the same territory, and cannot be sustained under the exercise of the police power." In Boyle Appeal, 179 Pa. Superior Ct. 318, 327 (1955), the court stated: "Where a small parcel of land is classified differently from all the surrounding area for no apparent reason or purpose except to favor the owner it is referred to as 'spot zoning', and is invalid because it is discriminatory." This court recognizes that in the case at bar a rezoning as such is not involved. Nevertheless, the court is of the opinion that through the mechanism of section 1510, the same type of prohibited classification is permitted. An indirect attempt to do that which cannot be accomplished directly must also fail.

This court feels that whether there be a legislative rezoning or a power granted to the board of adjustment whereby it can permit the introduction, on a lot by lot basis, of a commercial use into a residential district, through the medium of a special exception, such action violates the requirement that all zoning be based on a comprehensive plan.

However, despite the invalidity of section 1510 of the Zoning Ordinance of Cheltenham Township, the court is not unmindful of the present characteristics of the immediate vicinity of this property. This writer has personally visited the site in question and is cognizant of the combined effect of the traffic problem presented by the York Road frontage, the commercial establishments and apartment building located opposite the site in question, the commercial development of Cheltenham Avenue, one block to the south and the professional office permitted by a variance, located at the northeast corner of York Road and Cheltenham Avenue. On the other hand, the very fine and well-maintained residential area to the north and to the east of this property must be protected. A boundary line, so to speak, must be achieved between the commercial developments and the residential community in this area. The drawing of such a line is by necessity a most difficult one. The site involved in the case at bar is presently located in the residential community, but, at the same time, it is very much affected by the commercial area. Being directly opposite the General Fireproofing Company's office and warehouse and the apartment building, this court is of the opinion that the property is more suitable for use as an executive office. Such a use, with proper conditions and safeguards strictly adhered to, would not adversely affect the residential area. The maintenance of its outward residential appearance will be in keeping with the

residential community and its use as an executive office will fit in with the development of York Road between Cheltenham Avenue and Valley Road.

Although this case did not arise under a request for a variance, this court will allow this executive office use as a variance. A court of common pleas possesses the jurisdiction to grant a variance on an appeal from a special exception. ". . . it is the province of a court of common pleas, upon an appeal from an order of a board of adjustment, to consider and dispose of the matter on the merits": Dooling's Windy Hill, Inc., v. Springfield Township Zoning Board of Adjustment, 371 Pa. 290, 297 (1952).

The basis for the grant of a variance is well settled. The moving party must show that: (a) The variance will not be contrary to the public interest; and (b) unnecessary hardship will result if it is not granted: O'Neill v. Philadelphia Zoning Board of Adjustment, 384 Pa. 379 (1956). The unnecessary hardship must be unique and substantial to the property involved: Richman v. Zoning Board of Adjustment, 391 Pa. 254 (1958). This court is of the opinion that the intervenor has met these burdens.

The real estate agents for this property have been unable to sell it for residential purposes for two years. The reasons for this are the combined effect produced by the presence of the service station and the recently erected office and warehouse building facing this property and the heavily traveled York Road. This condition is peculiar to the four properties on the east side of York Road between Cheltenham Avenue and Valley Road. Previously, one of these properties has, through a variance, been allowed to be used as a professional office. Its outward appearance as a residence has been maintained and thus has not created any apparent change in the character of the neighborhood except for

an unnecessarily excessive use of floodlights. Literal compliance with the zoning regulation would work an unnecessary hardship on the property in question. The hardships lie in the sharply reduced desirability of this property for a residence. The hardship is unnecessary because, with proper conditions strictly adhered to, the property may be used as an executive office without adversely affecting the surrounding residences. The use for an executive office would not be contrary to the public interest.

And now, to wit, January 6, 1959, in view of the foregoing, the decision of the Board of Adjustment of Cheltenham Township granting a special exception pursuant to section 1510 of the zoning ordinance is reversed because of the unconstitutionality of the aforementioned section. The Board of Adjustment of Cheltenham Township is directed to grant a variance to the applicant, Stofflet & Tillotson, allowing the applicant to use the property herein involved as an executive office, limited by and conditioned on strict compliance with the following safeguards and restrictions:

1. The premises shall not be used, at any time, by more than one business or professional entity;

2. The use of the premises shall be limited to an office for executive, administrative, clerical and engineering purposes, provided, however, that there shall be no manufacture, storage, warehousing, sale or display of goods or merchandise;

3. There are to be no changes made to the exterior of the building. Its outward residential appearance shall be maintained;

4. On-site parking for automobiles shall be limited to the area south of the building;

5. The only driveway providing access to the on-site parking area shall be located to the east of the building, providing access to Valley Road;

6. Said driveway shall be located no less than three feet west of the eastern property line;

7. The three-foot zone between the driveway and the east property line, extending from Valley Road to the southern property line, shall be landscaped and maintained with shrubbery in such manner as to effectively and continuously screen the driveway and parking area from the adjacent property on the east. The southern boundary line shall be landscaped and maintained with shrubbery in such manner as to effectively and continuously screen the driveway and parking area from the adjacent property on the south;

8. Adequate drainage facilities shall be installed and maintained in the parking area and driveway so as to prevent water runoff on the adjoining properties;

9. Commercial vehicles, including but not limited to trucks, jeeps, construction vehicles or construction equipment, are not to be used in connection with the executive office site, nor are they to be parked in the vicinity thereof or in the parking area on the premises;

10. The entire unbuilt area of the premises, excepting the hereinbefore-mentioned driveway and parking area, shall remain open, unbuilt upon, without further construction of any hardtop surfaces and shall be maintained in a landscaped condition, similar in nature to those of neighboring residential properties and free of any exhibits or displays of any kind and character;

11. There are to be no floodlights or illuminating devices used on the outside of the building or grounds;

12. Any sign erected shall conform to the zoning ordinance, shall not be illuminated in any manner and shall not be located on Valley Road. No more than one sign may be placed upon the premises and said sign

shall be solely for the purpose of identifying the occupant;

13. The number of employes upon the premises shall be limited to **20 and;**

14. The use of the building shall be limited to six days per week, Monday through Saturday, and shall further be limited to the hours between 7 a.m. and 9 p.m.